Iowa Business Men's Building & Loan Association v.
Sarah E. Fitch, Appellant.

**Building and loan associations:** CONTRACTS:     VARIANCE BY PAROL.
1   Where the undertakings of parties have been reduced to writing
they will, in the absence of fraud, be regarded as evidencing their
agreement as finally consummated, and oral evidence of pre-
liminary negotiations is not admissible to vary the same: as where
all of the papers in relation to a subscription to stock in a
building and loan association and a loan in connection therewith,
as well as the articles of association, were to the effect that it
would require ninety monthly payments of a stated amount to
mature the stock, proof of the agents oral representations that
its·maturity would require a less number of payments was in-
admissible.

**Same:** PRESUMPTION AS TO KNOWLEDGE OF WRITINGS:     ESTOPPEL.   Al-
2   though there may be no evidence that a member and borrower of
a building and loan association actually knew the contents of the
various instruments signed, still in the absence of any reason to
the contrary he will be conclusively presumed to have known
the provisions of a note given as evidence of the loan, at the
time of its execution; and having accepted a certificate of stock
and membership in a mutual association it will be inferred
that he knew the provisions thereof and of its articles of in-
corporation, and the association is not estopped by reason of
prior oral representations of its agent from insisting on the terms
of the written contract.

**Pleadings:** DENIAL OF CORPORATE CAPACITY:     QUESTION NOT RAISED
3   BELOW.   To controvert an allegation of incorporation the facts
relied upon must be specifically pleaded; so that where it is
alleged that plaintiff is a corporation organized under the laws
of the state for the purpose of doing a building and loan busi-
ness, an allegation of the answer that the contract sued on was
void for usury does not put in issue plaintiff's corporate status:
and this question to be available on appeal must be first raised in
the lower court.

**Building and loan associations:** ASSESSMENT OF FINES.   Building
4   and loan associations are only authorized by the statute to assess
fines against their delinquent members, when there are asso-

ciation profits for the time of such delinquency, from which the same may be taken.

**Evidence:** BOOKS OF ACCOUNT: COPIES: PAROL EVIDENCE. The mere inconvenience of producing original books of entry will not justify the substitution of copies thereof, still testimony of what books do not contain, and expert opinion, the result of examination of long accounts is sometimes permissible, as where a building and loan association in seeking to foreclose a mortgage offered in evidence statements as to dividends, the amount due on the loan and the cost of maturing it, which were objectionable as secondary, still the testimony of the secretary on cross-examination as to the contents of the statements, and that they were correct as appeared from an examination of the plaintiff's books, is held competent on the question of the book value of defendant's stock and amount due on the loan.

**Building and loan associations:** VOLUNTARY LIQUIDATION: RIGHTS OF BORROWER. The fact that a building and loan association ceases to take on new business but proceeds voluntarily to wind up its affairs does not prevent it from performing existing contracts, and a borrower cannot compel it to adjust his loan on the basis of an ordinary loan and accept the book value of his stock on the date it ceased to engage in new business.

*Appeal from Story District Court.*—HON. R. M. WRIGHT, Judge.

SATURDAY, APRIL 10, 1909.

SUIT to foreclose mortgage resulted in decree as prayed. The defendant appeals—*Modified* and *affirmed.*

*J. M. St. John, E. H. Addison* and *B. B. Welty,* for appellant.

*J. L. Carney,* for appellee.

LADD, J.—The plaintiff is a building and loan association organized in 1891, and on February 13, 1897, loaned the defendant $500. She gave her promissory note, and as security executed a mortgage and assigned

five shares of stock which she then received in the association. The note recited that it was given as an advance payment for the stock and her agreement to pay $8.50 monthly on said stock, $3 as dues, $3 as premium, and $2.50 as interest, the first payment on date thereof and thereafter "on the 1st day of each and every month, until the dues paid, together with the earnings accruing on each share of the stock of said association held by said Sarah E. Fitch and assigned to said association as collateral security for the payment of this note, amount to one hundred dollars." On this stock defendant had paid eighty-three payments, besides three payments of dues in advance, and she claims to have made three premium and interest payments in advance, though these do not appear on her passbook. The answer pleaded: (1) Usury; (2) payment, and that the stock had matured; and (3) that defendant was induced to borrow the money and become a member of the association by its representation and guaranty that "said five shares of stock would mature and pay off said loan in 84 months," and that plaintiff was "precluded from claiming that said stock had not matured when defendant ceased making further payments."

Taking these defenses up in the reverse order, we have to say that the evidence warranted the conclusion that the agents of the association orally represented to defendant that eighty-four payments would mature the stock, but there was no allegation that the statements were knowingly false or made to deceive. The contention seems to be that the association should be estopped thereby from contending otherwise. We do not think so. Whatever may have been the representations, she agreed by the terms of the note that payments were to be made until the dues and earnings on each share of the stock amounted to $100. Moreover, the certificate of stock which she received and assigned as security recited that,

1. BUILDING AND LOAN ASSOCIATIONS: contracts: variance by parol.

when the payments and profits credited amounted to $100, the stock was mature, and that "when payments of ninety full months have been duly paid to said association the board of directors shall pay to the legal holder of this certificate its full book value if demanded." The articles of the association provided that "this class of stock may be settled for at book value after ninety payments have been duly made." So these several instruments advised her that more than eighty-four payments were contemplated, and, as they embodied the undertakings of the association as well as herself in writing or print, must be regarded, in the absence of any charge of fraud, as evidencing the agreements between them as finally consummated. What may have been said in the preliminary negotiations was merged in the written agreements, and evidence thereof to vary the latter was not admissible. *Congower v. Ass'n,* 94 Iowa, 505; *Phillipy v. Homesteaders,* 140 Iowa, 562; *McEnery v. McEnery,* 110 Iowa, 718.

As contended, there was no evidence as to whether defendant knew the contents of the several instruments; but no reason to the contrary being shown, she is con-

2. SAME: presumption as to knowledge of writings: estoppel. clusively presumed to have known the provisions of the note, at least, when she executed it. *Chapman v. Chapman,* 132 Iowa, 5; *Bonnot Co. v. Newman,* 109 Iowa, 580. And as she received the certificate of stock and became a member of the association, mutual in character, it is to be inferred that she was aware of the provisions of the certificate and of the articles of incorporation. This being so, it is manifest that the association was not estopped from insisting upon the terms of the contract as reduced to writing.

II. To sustain the charge of usury, appellant argues that plaintiff is not a building and loan association, and hence was not authorized to exact interest at a higher rate than eight percent per annum. It is enough to say that plaintiff expressly avers that it "is a corporation or-

ganized under the laws of Iowa for the purpose of carry-
ing on the building and loan association busi-

3. PLEADING: de-
nial of corpo-
rate capacity:
question not
raised below.

ness in accordance with said laws." This
was not put in issue by the assertion of
facts relied on to show otherwise, as re-
quired in section 3628 of the Code, or in any other man-
ner, and the allegation of usury alone did not put in
issue the plaintiff's corporate capacity. Moreover, the
point was not made in the district court, and appellant is
precluded from trying her case on a theory urged in this
court for the first time. Assuming the validity of the
incorporation, the contract was not usurious. *Iowa De-
posit & Loan Co. v. Matthews,* 126 Iowa, 743; *Bacon v.
Savings & Loan Ass'n,* 121 Iowa, 449; *Edworthy v. Ass'n,*
114 Iowa, 220.

III. The defendant, up to and including January 1,
1904, had paid eighty-six payments of dues, or $258.
As the Twenty-Eighth General Assembly prohibited any
building and loan association from charging interest in
excess of 8 percent per annum, and plaintiff continued
making loans, it concluded to reduce the rate of interest
on outstanding loans to 8 percent, and accordingly the re-
duction in interest and premium as computed by the as-
sociation amounted to $94.60. The net dividends credited
were $54.25, making a total of $406.85 as the book value
of the stock January 1, 1904. This deducted from the
face value of the stock left a balance of $93.15. No pay-
ments thereafter were made by defendant. Since January
1, 1904, the association had not earned any dividends, and
appellee contends that the balance owing the association is
to be ascertained by dividing the above sum of $93.15
by the monthly dues of $3, plus the excess monthly in-
terest of $2.15, giving eighteen as the number of monthly
dues, interest and premium necessary to mature the stock.
This would amount to $153. To this it added fines at
the rate of three cents per share for the first month and

five cents per share for each month during the period of the delinquency, or $40.95 in all. In this manner it is said the stock would be matured July 1, 1905, and the total of these sums should draw interest at the rate of 8 percent per annum from that date.

IV. The authority for the assessment of fines is found in section 1903a, Code Supp. 1902, which provides that: "Any stockholder in arrears in payments may be fined in a sum not in excess of three cents on one hundred dollars each for the first month's delinquency and five cents per share on one hundred dollars each for each succeeding month's delinquency; but said penalty shall only be due and payable from the profits belonging to said delinquent." It appeared that no profits were earned during defendant's alleged deliquency and for this reason under the terms of the statute, no fines could be assessed. While a profit earning association may assess fines against delinquents, it is manifest that no such penalty should be imposed when no income is produced on payments when received. In such a situation the association suffers no injury if the member retains his money. On the other hand, if it is earning dividends, there is no good reason for permitting one who omits to keep up his payments to share these without suffering some deduction therefrom because of the loss occasioned by his delinquency. The fiscal year of building and loan associations corresponds with the calendar year (section 1914, Code), and after the profits have been distributed and set apart to shareholders they are not to be included in those here contemplated. The profits out of which fines may be taken are those accruing to the member during the fiscal year and which have not been appropriated to the respective members as dividends.

V. The secretary of the association testified that the various statements offered in evidence, such as of dividends, the amount due on the loan, and of the cost of

4. BUILDING AND LOAN ASSOCIATIONS: assessment of fines.

maturing it, were correct and as they appeared on plaintiff's

5. EVIDENCE: books of account: copies: parol evidence.

books, and that these could not conveniently be brought to court. When these statements were offered, they were objected to as not the best evidence. The objection must be sustained. *Creswell v. Stack,* 68 Iowa, 110; *Peck v. Parchen,* 52 Iowa, 46; *Halstead v. Cuppy,* 67 Iowa, 600. The mere matter of inconvenience will not justify the substitution of copies for the original entry of books of accounts, though testimony of what books do not disclose and expert opinion of the result of an examination of extensive accounts is sometimes admissible. *In re Estate of Colton,* 129 Iowa, 542; *State v. Cadwell,* 79 Iowa, 432. And of this character was the testimony of the secretary brought out in the course of cross-examination. As the plaintiff had merely offered the statement in evidence, this testimony was original and was to the effect that dividends in the sum of $69.30 had been earned prior to January 1, 1904, out of which expenses amounting to $15.05 had been taken, leaving $54.25 as earned; also, that the monthly reduction of $2.15 from interest and premiums for forty-four months owing to the reduction in interest to 8 percent making $94.60 should be allowed; that these sums should be added to the eighty-six payments of dues, or $258; and that the total, or $406.85, would be the book value of the stock January 1, 1904. This evidence was the result of computation from the books, and as it was drawn from the witness by the defendant, and is uncontroverted, must be held to establish the book value at the date named. The witness also testified that no profits had been earned since that time, and that therefore out of the monthly payments of $8.50, which defendant had undertaken to make until the stock matured, $3 as dues and $2.15 as reduction of interest, or $5.15 would have been applied on the balance due on the note. The computation indicates that eighteen month-

ly payments were necessary to mature the stock, and that this would have matured the stock July 1, 1905.

VI. No new business has been done by the association since January 1, 1904. Since then it has been engaged in winding up its affairs. Its earnings have been consumed by its losses. Appellant contends that, because of the association having undertaken voluntary liquidation, her obligation should be adjusted as an ordinary loan, and she be held to the payment of but the book value January 1, 1904, with interest thereon at 8 percent per annum; but the business of the association ceased only in the matter of making new loans. Otherwise it was carried on as before and with the design of maturing the stock of the several members as contemplated in its issuance. So there was no breach of the contract on the part of the association, nor has it been put in a situation where it can not fulfill the obligations undertaken. For this reason the liability of defendant is not to be computed as though the corporation was disabled from fulfilling its part of the agreement, as when a receiver is appointed to wind up its affairs, or when its life is suddenly terminated by present liquidation. See Endlich on Building & Loan Associations (2d Ed.), section 531; 7 Thomp. Corp., section 8796; *International B. & L. Ass'n v. Braden* (Tex. Civ. App.) 32 S. W. 704.

6. BUILDING AND LOAN ASSOCIATIONS: voluntary liquidation: rights of borrower.

The decree will be modified so as to omit the fines and allow plaintiff judgment for $153, with interest at 8 percent per annum from July 1, 1905.—*Modified* and *affirmed.*