[No. 17239.   Department One.   September 18, 1922.]

## HITT FIREWORKS COMPANY, *Respondent,* v. SCANDINAVIAN AMERICAN BANK OF TACOMA *et al., Appellants.*[1]

PLEADING (111, 112)—AMENDMENT—COMPLAINT—DEPARTURE.   It is not a departure to amend a complaint against a bank for damages for breach of an agreement to hold money in a special deposit, by a supplemental complaint, after the bank went into the hands of a receiver, praying that the deposit be declared a special one, held in trust for plaintiff, where it appears that the question as to the character of the deposit was the principal issue under the original complaint.

BANKS AND BANKING (26)—GENERAL OR SPECIAL DEPOSITS—EVIDENCE AS TO PURPOSE—SUFFICIENCY.   There was a special and not a general deposit, rendering the bank liable as a trustee and preventing the bank from charging the account, where plaintiff, a fireworks company, had a lien on gate receipts received at evening performances given by an exposition company, between whom it was agreed and understood that the money was to be held in a separate fund to be applied on the contract of plaintiff, who was offered the money late at night, and who, owing to the lateness of the hour, accepted a check instead on the assurance that the money on the table before him would be reserved for him, made by the treasurer of the exposition, who was also the cashier of the bank, and the money was placed by him, or others by his direction, on the floor of the vault, where it remained over the holidays.

SAME (26).   In such a case, evidence as to how former checks given as partial payments on the same contract had been handled is immaterial where they were given under different circumstances and were in no way in controversy.

SAME (26)—GENERAL OR SPECIAL DEPOSIT—"EAR-MARK" RULE—APPLICATION.   Where a bank, one week before going into the hands of a receiver, accepted a special deposit of $8,100, and at all times had not less than $80,000 in cash on hand until the receiver took possession, the special deposit is a trust fund, prior to the rights of general creditors; the "ear-mark" rule requiring identification of the money being no longer applied to defeat the trust in such a case.

Appeal from a judgment of the superior court for Pierce county, Chapman, J., entered December 20,

[1]Reported in 209 Pac. 680.

1921, upon findings in favor of the plaintiff, in an action to recover a special deposit, tried to the court. Affirmed.

*Guy E. Kelly, Thomas MacMahon*, and *F. D. Oakley*, for appellants.

*Ellis, Fletcher & Evans*, for respondent.

Mitchell, J.—This is the second appeal in this case. The first trial in the superior court resulted in a judgment of nonsuit, which was reversed, as reported in 114 Wash. 167, 195 Pac. 13, 196 Pac. 629, where a rather complete history of the cause of the litigation may be found.  Subsequent to the first trial, the bank closed its doors to business and its affairs were taken over by the supervisor of banking for the purpose of liquidation.   Thereupon the plaintiff filed an amended and supplemental complaint, alleging the changed conditions concerning the bank's affairs and asking judgment that the $8,100 involved in the action be adjudged to be a special deposit and trust fund in the hands of the defendants, and as such to be preferred over and above the claims of general creditors.   Upon the amended and supplemental complaint, answer and reply, the second trial resulted in a judgment in favor of the plaintiff, from which the defendants have appealed.

First, it is claimed the court committed error in refusing to strike the amended and supplemental complaint.   The argument is that it is inconsistent with the original complaint; that the first was to recover damages, while the second is an action to have it decreed that the deposit involved was a special one and constituted a trust fund in the hands of the bank.   The point must be decided against the appellants.   The purpose of the original complaint was clearly stated in the opinion on the former appeal wherein, after de-

fining the issues and reciting material evidence, we said: "The first question to be determined is whether the deposit in the bank made on Monday morning was a special or general deposit." That opinion makes it plain that the judgment of nonsuit was reversed because it appeared the bank violated its agreement made through its cashier to hold the money it received as a special deposit or trust fund to meet the check in favor of the respondent. That is still the one allegation of prime importance in the second complaint. Its allegations are in substantive effect in no sense a departure from those of the original complaint, other than the bringing in of new parties and alleging the facts with reference thereto, made necessary to disclose changed conditions that occurred after the former trial, that is, the passing of the affairs of the bank into the hands of the supervisor of banking.

Next it is contended the court erred in giving judgment for the respondent in any sum. The respondent earned its money, $14,100, by services rendered under a written contract with the Northwest Peace Jubilee, of which Mr. Ogden was treasurer, he being at the same time cashier of the bank with which the Northwest Peace Jubilee did its banking. In payment, the Northwest Peace Jubilee gave respondent a check for $3,000, dated July 2, another one for $3,000, dated July 3, and the one involved in this controversy for $8,100, dated July 4, and it is now argued that the testimony in the present record is not as convincing nor sufficient as it was held to be upon the former appeal in support of the claim that the $8,100 check was to be taken care of by money received for that special purpose by the bank acting through its cashier, Mr. Ogden. It is true that some detached portions of the testimony of the president of the respondent corporation lend color to the

argument, but he positively testified that, on July 4, upon receiving the $8,100 check, at which time mention was made of an additional $200 due respondent not covered by the contract, Mr. Ogden stated that, due to the fact the money he was paying was in a special fund, he could not pay the $200 out of that fund, but that it would have to be paid otherwise. Further, and upon the same subject, Mr. Taylor, a member of the executive committee of the Northwest Peace Jubilee, among other things, testified that, on the night of July 4, after the receipts from the show had been gathered and the check for $8,100 tendered the respondent, a conversation occurred between respondent's president and Mr. Ogden as follows:

"The conversation was just that Mr. Ogden congratulated Mr. Hitt and made this remark: 'Your show has pulled us out of the hole.' Mr. Morse then produced a check, brought it to Mr. Ogden, who signed it, in my presence. It was then handed to Mr. Hitt. Mr. Hitt objected at first, stating that he wanted an assurance that the money that was then on the table before us would be reserved for him and kept in the special fund as was understood by Mr. Ogden and the committee and Mr. Hitt, and with that assurance that check was accepted."

The trial court made a finding to this same effect, and found as a reason for the plan adopted that "it was late at night and inconvenient for Mr. Hitt to handle the coin and he accepted the check." There is evidence on behalf of the appellant to the contrary, but we conclude as did the trial court upon this issue of fact.

Another contention is that the court erred in refusing to allow appellants to cross-examine Mr. Hitt, and in refusing to allow them to introduce evidence, both with reference to the two $3,000 checks. Those

two checks were paid when presented to the bank and are in no way in the controversy at the present time. Only the $8,100 check is important. If, when the latter check was taken, the relations of the respondent through its president, Mr. Hitt, and the bank through its cashier, Mr. Ogden, concerning the character of the deposit in the bank, had depended for exposition upon what their relations were in that regard when either or both of the $3,000 checks were given, a different situation would be presented and the inquiries denied should have been allowed. But such was not the case, for, as already noticed, the testimony upon which the findings and judgment rest is positive concerning the understanding of the parties at the time the $8,100 check was given, and therefore any testimony concerning either or both of the other checks was not important.

Another assignment of error is that the court erred in giving the respondent a preference over general creditors. Generally, the reason for the preference has been answered by the opinion on the former appeal and by what has been already said herein. Specifically, however, the "ear mark" rule is insisted upon, and that through the process of commingling the money or deposit in question with the general funds of the bank it has lost its identity, with the resultant effect of defeating the right of preference over general creditors. At the time the cashier of the bank took the funds in question and agreed to hold them as a trust fund, about midnight July 4, it was understood the check for $8,100 would be paid out of the special fund by the bank on July 7, 1919, Saturday and Sunday, July 5 and 6, being legal holidays under the statutes. It, therefore, became a special deposit. *Hitt Fireworks Co. v. Scandinavian American Bank,* 114 Wash. 167, 195 Pac. 13, 196 Pac. 629; *Stephens v. Chehalis Nat. Bank,* 80 Wash.

254, 141 Pac. 340.   At the present trial it was stipulated that the supervisor of banking took charge of the bank for the purpose of liquidation on January 15, 1921, and at that time there was on hand in the bank $80,000 in cash, and that at no time from the 7th of July, 1919, down to the time the officers of the state took charge of the bank was there less than $80,000 cash on hand in the bank.   The case is identical in principle with that of *Carlson v. Kies,* 75 Wash. 171, 134 Pac. 808, 47 L. R. A. (N. S.) 317, a case in which money claimed to have been a special deposit that had been commingled with the general funds of the bank was allowed to be recovered as trust funds over the rights of general creditors against the receiver, who took charge of the affairs of the bank upon its becoming insolvent.   In that case it was said:

"The appellant suggests that the identical money was not traced into the hands of the receiver.   That is true, but the old rule requiring an identification of the specific fund or its avails in the hands of a receiver has been relaxed in the later cases.   The doctrine of the modern authorities, and what we consider the sounder view, is that the trust fund is recoverable where an equal amount in cash remained continuously in the bank until its suspension and passed to the receiver. *Fogg v. Tyler, Shopert v. Indiana, Covey v. Cannon,* and *Massey v. Fisher, supra; Peters v. Bain,* 133 U. S. 670; *Smith v. Mottley,* 150 Fed. 266; *Boone County Nat. Bank v. Latimer,* 67 Fed. 27; *In re Northrup,* 152 Fed. 763; *In re Stewart,* 178 Fed. 463."

This rule was reaffirmed in the recent case of *In re Central Bank & Trust Co. v. Ritchie,* 120 Wash. 160, 206 Pac. 926.

Finally, it is contended error was committed in the allowance of interest at all, and especially as a preferred claim.   Manifestly the term "interest" found in the judgment is used in the sense of "damages" and

is recoverable because the promisee, respondent, has sustained a wrong in being unlawfully deprived of money in a liquidated sum. The amount is fixed at the statutory rate of interest, which is the standard of damages on the breach of money contracts. No argument is made nor reason given why the allowance of such damages should not be classed as a preference with the principal to which it relates, nor are we aware of any reason why it should not be in a case like this where the funds on hand are more than sufficient to meet it.

Affirmed.

PARKER, C. J., TOLMAN, BRIDGES, and FULLERTON, JJ., concur.