114

[No. 24334. Department One. May 12, 1933.]

*In the Matter of the Estate of* JOHN KRUEGER, *Deceased.*

JOHN W. WHITHAM, *as Executor, Appellant,* v. HARRY C. JOHNSON, *as Receiver of the Home Savings and Loan Association, Respondent.*[1]

*John W. Whitham* and *Wingate & Suffel,* for appellant.

*Bausman, Oldham, Cohen & Jarvis* and *Simon Wampold, Jr.,* for respondent.

HOLCOMB, J.—On January 28, 1926, appellant, as executor of the John Krueger estate, opened an ac-

[1] Reported in 21 P. (2d) 1030.

count in the Home Savings and Loan Association by placing two thousand dollars therein. At that time, appellant explained to Pierce, the secretary and manager of the Home Savings, that the money belonged to that estate and that it was necessary that the money be held in trust therefor. Pierce, purportedly in behalf of the Home Savings, agreed that the money would be held in trust by it, upon which appellant, on behalf of the Krueger estate, signed an application card to become a subscriber for shares of stock in the Home Savings and delivered the two thousand dollars to it. The application card so signed by appellant was in the name of the John Krueger estate, by John W. Whitham, and in the same form as all subscribers to stock of the Home Savings signed. It recites that the signer subscribes to become a shareholder in the Home Savings "in Class 'B' and hereby agrees to the By-Laws, Rules and Regulations of said Association."

Rem. Rev. Stat., § 3721, relating to building and loan associations, prescribes:

"Any association may issue the shares classified below when so provided by its by-laws: . . .
"(b) Savings shares, upon which payments shall be made in such sums and at such times as the holder thereof may elect until the shares reach their matured value or are withdrawn."

At the same time there was issued to John Krueger estate a pass book of the Home Savings numbered 32872, such as are usually issued to shareholders. Additional sums of money were placed by appellant in the Home Savings to the credit of that estate, and prior to October 2, 1928, all the money was withdrawn.

On October 2, 1928, appellant, as executor of the John Krueger estate, placed five thousand dollars belonging to the estate in the Home Savings. Again it was orally agreed between appellant and Pierce that

this money should be held in trust for the estate. A pass book, No. 32872, showing the placing of the five thousand dollars in the Home Savings to` the John Krueger estate, was delivered to appellant. This pass book was similar to all such pass books issued to subscribers to stock in the Home Savings. On the last page of this pass book is a certificate issued by the assistant secretary, Jarvis, reading:

"THE HOME SAVINGS AND LOAN ASSOCIATION
"Seattle, Washington
"CERTIFICATE

"THIS IS TO CERTIFY that the legal holder of this book owns one one-hundredth of a share of the capital stock of THE HOME SAVINGS AND LOAN ASSOCIATION, Seattle, Washington for every dollar standing to his or her credit on the books of the Association, subject to the by-laws of the association and the laws of the state of Washington."

Dividends aggregating $588.07 were regularly credited in the pass book until December 31, 1930.

On February 9, 1931, appellant signed a notice of withdrawal on the same printed form of withdrawal notice as used by all shareholders desiring to withdraw money. On May 7, 1931, appellant signed a "notice of cancellation of withdrawal notice" also on the standard form used by all shareholders.

On November 7, 1931, the Home Savings, being in financial difficulties, was taken over by the state department of efficiency. Appellant filed a claim for preference, which was disallowed. Suit was then brought by him for the recovery of the five thousand dollars *in toto*. The trial court decided adversely to appellant, and this appeal results.

Appellant seems to argue that, because the money was deposited in the Home Savings to the credit of "John Krueger estate," that, of itself, marks the fund as a trust fund which could be followed in

the funds of the Home Savings so long as there was
that much money in its hands or in the hands of the
receiver; and that he is seeking to recover money
which was never a part of the assets of the Home Sav-
ings. He asserts, also, that no shares in the Home
Savings were subscribed for at the time of depositing
the fund, or at any other time, and no shares were
issued because none were subscribed for, because the
money was deposited and received as a special fund.

These contentions cannot be sustained. It is true
that the five thousand dollars was placed in the Home
Savings in the name of the John Krueger estate, but it
was there placed also subject to our statutes relating
to savings and loan associations, Rem. Rev. Stat.,
§ 3716 *et seq.* There is nothing in the statutes relat-
ing to savings and loan associations authorizing them
to receive money in any such manner. The basic prin-
ciple underlying the business of savings and loan asso-
ciations under the Washington statute is mutuality.
*In re Puget Sound Savings & Loan Association,* 49
Fed. (2d) 922. That is also the general principle un-
derlying the operations of savings and loan associa-
tions. *Bulakowski v. Philadelphia Sav. Fund Society,*
270 Pa. 538, 113 Atl. 553; *Iowa Business Men's Build.
& Loan Assn. v. Fitch,* 142 Ia. 329, 120 N. W. 694.

In the above cited cases, it was held that what-
ever may have been said in the preliminary negotia-
tions was merged in the written agreements, and evi-
dence thereof to vary the latter was not admissible.
That being so, it was manifest that the association was
not estopped from insisting upon the terms of the con-
tract as reduced to writing. In the *Bulakowski* case, it
was observed that the rules were printed in the deposit
or pass book, and by accepting the book the depositor
assented to the regulations, which became a part of
the contract of deposit, for the protection of the bank

and the depositor, and binding on both alike; that it was not material whether the depositor was able to read the English language; that he should read, or have read to him, everything that related to the deposits.

■ Here, we have in appellant, not an unlettered man, but a lawyer of ability and experience. He could not misunderstand the books that were given him and the laws of the state. The certificate of stock in the back of the pass book was as binding and conclusive upon him as upon the association and the other members thereof; as if there had been issued highly ornate certificates of stock, which seems not to be necessary under the law nor customary under the methods and customs of savings and loan associations. Appellant "must be presumed to have known what the issuance of that kind of pass book would reasonably indicate." *Dearborn v. Washington Savings Bank,* 13 Wash. 345, 42 Pac. 1107.

It must be borne in mind that this was a savings and loan association, not a savings bank under our law, nor an ordinary commercial bank, nor a trust company. Of all these legal conditions, appellant was bound to take notice. Being a savings and loan association and not being a commercial bank or a trust company, or a corporation doing a trust business under Rem. Rev. Stat., § 3256, it could not lawfully receive funds as trust funds for safe keeping for the depositor. The receiver, representing all of the shareholders and creditors, is bound by the same law.

Our cases relied upon by appellant, *Carlson v. Kies,* 75 Wash. 171, 134 Pac. 808, 47 L. R. A. (N. S.) 317; *Kies v. Wilkinson,* 101 Wash. 340, 172 Pac. 351, and *Hitt Fireworks Co. v. Scandinavian American Bank,* 121 Wash. 261, 209 Pac. 680, have no bearing upon any of the situations presented in this case, nor do 53 C. J.

246; *Michigan Steamship Co. v. Thornton,* 136 Fed. 134; *Carley v. Graves,* 85 Mich. 483, 48 N. W. 710, 24 Am. St. 99, and *Steele v. Citizens' State Bank,* 116 Kan. 510, 227 Pac. 352. All of the outside cases deal with different classes of banks from such an association as is here involved and deposits of funds as special funds for the purposes of trust in institutions so authorized by law. This case is governed by the reasons and principles adopted in the Pennsylvania and Iowa cases, *supra.*

Although deeply sympathetic with appellant as the honest victim of a very unfortunate and unsuspected condition of affairs, we can see no relief for him.

The judgment is affirmed.

BEALS, C. J., MITCHELL, and MILLARD, JJ., concur.