**Elizabeth LITTLEFIELD**

v.

**STATE of Maine, DEPARTMENT OF HUMAN SERVICES.**

Supreme Judicial Court of Maine.

Argued Jan. 19, 1984.

Decided July 2, 1984.

Eaton, Glass, Marsano & Woodward, Francis C. Marsano (orally), Belfast, for plaintiff.

Katherine Greason, Asst. Atty. Gen., Department of Human Services (orally), Augusta, for defendant.

Before McKUSICK, C.J., ROBERTS, VIOLETTE, WATHEN, GLASSMAN, and SCOLNIK, JJ., and DUFRESNE, A.R.J.

DUFRESNE, Active Retired Justice.

Elizabeth Littlefield, an AFDC recipient, pursuant to Rule 80C(m), M.R.Civ.P., seeks in this appeal a review of the judgment of the Superior Court (Waldo County) affirming rulings of the Department of Human Services terminating for the period of 37 months her monthly benefits of three hundred thirty-two ($332.00) dollars for herself and a minor daughter under the Aid to Families with Dependent Children program. Because the Department of Human Services (DHS) in its application of the lump sum rule so-called in a manner inconsistent with its own regulations erroneously calculated the appellant's term of ineligibility to receive benefits under the program, we vacate the judgment below and remand the case for proper evaluation.

In November, 1982, while under an AFDC grant of $332.00 per month for herself and her minor daughter, Ms. Littlefield accepted $21,000.00 in full settlement of a personal injury and property damage tort claim arising out of a previous automobile accident in which she received a compression fracture to her back, her car was demolished and other personal property damaged. Her AFDC benefits at the time were her only source of financial subsistence. As is usually the case in such settlements, the insurance company had made the $21,000 draft in both Ms. Littlefield's and her attorney's names so as to guarantee payment of legal, medical and hospital

fees and expenses connected with the litigation. It is not disputed that Ms. Littlefield's attorney had undertaken to guarantee the payment of hospital and doctor bills to be incurred pending disposition of her claim out of the settlement proceeds. Thus, the appellant's attorney did retain the sum of $8,648.35 out of the draft payment, turning over the balance of $12,-351.65 to Ms. Littlefield as her net share of the settlement.[1] On receipt of this money, the appellant promptly proceeded to dispose of it by paying alleged personal debts to her mother ($3,500.00), and her sister ($1,000.00). She had borrowed $1,569.75 from her father to replace her automobile completely destroyed in the accident and cancelled that indebtedness out of the insurance proceeds. She bought a clothes dryer, dishwasher and sewing machine for $1,076.00. She further depleted the settlement funds by paying off past due utility bills, and a bank loan, and department store debts. She also purchased other furniture, clothing, food and wedding rings with the balance of the stated moneys.

When Ms. Littlefield notified the Department of Human Services of the insurance settlement and her receipt of the net amount of $12,351.65, the agency sent her a notice dated January 17, 1983 indicating that her AFDC payments would be terminated for 37 months.[2] The following day, the appellant requested an administrative hearing on her welfare termination. On February 2, 1983 the Department of Human Services held a hearing to review the 37-month termination of Ms. Littlefield's AFDC benefits. By decision dated February 14, 1983, the hearing officer approved the assistance termination. Ms. Littlefield, pursuant to 5 M.R.S.A. § 11001, *et seq.*

---

**1.** The Department never questioned the attorney's preemptive taking in evaluating the impact of the settlement upon Ms. Littlefield's entitlement to benefits under the AFDC program. The issue between the parties only affects the receipt by Ms. Littlefield of the net sum of $12,351.65. Our acceptance of the issue as postured by the parties shall not be construed as approval or disapproval of the correctness of the amount deducted from the total settlement figure, not-

ing that a portion of the charged attorney fees covered past services on a matter not related to the tort claim.

**2.** The disqualification period of 37 months was derived by dividing the $12,351.65 "net" settlement figure by her monthly assistance level of $332.00.

(M.R.Civ.P. 80C), filed a complaint in the Superior Court which, by decision dated June 27, 1983, denied her request for a temporary injunction and affirmed the decision of the hearing officer.

The Department justifies its decision on the basis of its welfare regulations then in effect. Printed in the Maine Public Assistance Payments Manual (MPAPM), the regulations purport to have the force of law and serve as the official guiding chart in the administrative assessment of welfare eligibility of applicants. Among other things, they establish levels of financial need, below which individuals are eligible for assistance. They set in detail the dollar amounts to which eligible needy applicants are entitled. They further specify the maximum amounts of resources which welfare recipients may have or keep in reserves before losing their eligibility to receive benefits under the AFDC program. They indicate that the income of participants will be considered in the assessment of benefits which will be tailored to reflect that factor.

More specifically, the Department justifies its termination of Ms. Littlefield's welfare benefits for the period of 37 months on its "Non-Recurring Lump Sum Income" regulation as it existed at the time of the receipt of the insurance settlement and of the ruling made thereon. This regulation at the time read in part as follows:

G. *Special Instructions for Treatment of Certain Types of Income and Deductions*

 1. *Non-Recurring Lump Sum Income* (For example: retroactive benefits such as Social Security, Workman's Compensation, Unemployment, etc.) If the assistance unit's total amount of countable earned and unearned income (excluding the AFDC grant and including the lump sum income) exceeds the standard of need in the month of receipt of the income, the unit will be ineligible for assistance for the number of full months derived by dividing the total income by the needs standard applicable to that family. Any income remaining after this calculation is treated as if it is income received in the first month following the period of ineligibility and is considered available for use at that time. The first month of the period of ineligibility is the month of receipt of the lump sum income.... Sums of money earmarked for specific purposes such as settlement for back medical bills resulting from accidents or injury, compensation for loss of resources, legal fees, etc. are to be excluded as lump sum income, so long as the money is used for the specific purpose intended under the terms of the settlement.

Sums of money received from IRS Tax Refunds are to be considered as an asset.

M.P.A.P.M. ch. II, § C, p. 9 § G(1).[3]

In our approach to the issue, whether the Department was correct in its decision respecting the impact of the lump sum rule upon Ms. Littlefield's eligibility to continued AFDC payments, we must have in mind that the AFDC program under the Social Security Act is a joint federal-state undertaking purposely designed to provide financial assistance to needy dependent children and the parents or relatives who live with and care for them. Its comprehensive stated purpose is "to help ... parents or relatives to attain or retain capability for the maximum self-support and personal independence consistent with the maintenance of continuing parental care and protection ... ." 42 U.S.C. § 601. It is financed in large measure by the federal

---

**3.** In October, 1983, the regulation was revised to read in its top stated paragraph as follows:

*Non-Recurring Lump Sum Income.* Payments received as a result of an accumulation of income are considered as lump sum payments. They include but are not limited to: retroactive portions of Social Security benefits, Workman's Compensation, Unemployment Benefits, Disability Income, Veterans Benefits, Pay Raises, etc.

In January, 1984, further revision provided that assets include Windfall income such as ... insurance settlements.

government on a matching fund basis, and participating states must submit for approval AFDC plans which are in conformity with the federal act and the regulations promulgated thereunder by the Department of Health, Education, and Welfare, the administrative federal agency involved. The program, however, is then administered by the states, which are given broad discretion in determining both the standard of need and the level of benefits. *Shea v. Vialpando,* 416 U.S. 251, 253, 94 S.Ct. 1746, 1750, 40 L.Ed.2d 120 (1974).

Also, in the administration of the AFDC program which is based on a scheme of cooperative federalism, the federal legislation (42 U.S.C. § 602(a)(1984)), as well as the State of Maine law (22 M.R.S.A. § 3741 (1980)), requires state compliance with the several requirements of the Social Security Law as amended and the federal regulations promulgated thereunder. These federal regulations are binding on participating states and regulations promulgated under state authority which contravene, or are inconsistent with, either the act itself or the federal regulations are invalid under the Supremacy Clause of the United States Constitution. U.S.C.A. Const. art. 6, cl. 2. *See King v. Smith,* 392 U.S. 309, 317, 88 S.Ct. 2128, 2133, 20 L.Ed.2d 1118 (1968); *Randall v. Goldmark,* 366 F.Supp. 947, 952 (D.Mass.1973); *Ottman v. Fisher,* 319 A.2d 56, 60–61 (Me.1974). State programs restricting eligibility or calculating need in a manner inconsistent with federal regulations are not valid. *Miller v. Youakim,* 440 U.S. 125, 99 S.Ct. 957, 59 L.Ed.2d 194 (1979). Furthermore, mere approval of a State AFDC plan by the Department of Health, Education & Welfare, the federal agency, will not insulate the terms of the plan from judicial review and assure its validity. *See Woodman v. Dept. of Health & Social Services,* 101 Wis.2d 315, 304 N.W.2d 723, 727 (1981). And, as we said in *Ottman v. Fisher,* 319 A.2d, at 64, it is clear that Maine has adopted the same goals for its AFDC program as those adopted by Congress.

We will now proceed to consider the appellant's points on appeal in the light of these stated preliminaries. It was argued below and the argument was presented to us on appeal that the lump sum rule used by the appellee to terminate Ms. Littlefield's AFDC welfare payments was inapplicable to her case, since she did not, at the time, have earned income and, under the Social Security Act and federal regulations, the nonrecurring lump sum rule applies, so it is claimed, only to those AFDC families *with earned income* in the month of receipt of the lump sum payment. This very argument was made in *Sweeney v. Murray,* 732 F.2d 1022 (1st Cir.,1984) and was rejected. The interpretation of federal statutes, including the Social Security Act, and the construction of federal regulations or policies are matters of federal rather than state law and the proper subject for determination by federal rather than state courts. *See Finch v. Weinberger,* 407 F.Supp. 34, 48 (N.D.Ga.1975), aff'd *sub nom. Cash v. Mathews,* 425 U.S. 967, 96 S.Ct. 2162, 48 L.Ed.2d 791 (1976); *Nott v. Folsom,* 161 F.Supp. 905, 907 (S.D.N.Y. 1958), aff'd *sub nomen Nott v. Flemming,* 272 F.2d 380 (2nd Cir.1959). Moreover, the Social Security Act and its amendments must be construed so as to effectuate the legislative intent and purposes of the United States Congress rather than any possible contrary intent which the state legislature might have entertained in enacting participating legislation. *Finch v. Weinberger,* 407 F.Supp. at 48. Thus, a state statute or regulation violating the established purpose of the Social Security Act as amended must needs be invalid. *See Dews v. Henry,* 297 F.Supp. 587, 592 (D.Ariz. 1969).

In *Sweeney v. Murray,* in order to determine whether the new lump sum rule enacted by the Congress as part of the Omnibus Budget Reconciliation Act of 1981 (OBRA) was inapplicable to AFDC families without earned income, one of the contentions raised by the appellant in the instant case, the Court of Appeals for the First

Circuit made an exhaustive analysis of the Social Security Act, the OBRA amendments, and the regulations thereunder. It concluded that the new lump sum rule involving receipts of nonrecurring lump sum income (such as an inheritance, *a personal injury* judgment or *settlement,* or a workers' compensation award) requires treating such monetary receipts as a substitute for future AFDC payments. The Court expressly found the intent of Congress in enacting the new lump sum rule to be an effort on the part of Congress to eliminate the "perverse effect" of the former lump sum rule which created no incentive for AFDC families to budget lump sum income.

 As we stated in *State v. Knowles,* 371 A.2d 624 (Me.1977), even though only a decision of the Supreme Court of the United States is the supreme law of the land on a federal issue [in that case a constitutional one], nevertheless, in the interests of existing harmonious federal-state relationships, it is a wise policy that a state court of last resort accept, so far as reasonably possible, a decision of its federal circuit court on such a federal question. *See State v. Lafferty,* 309 A.2d 647, 667 (Me.1973) (concurring opinion of Wernick, J.). We conclude that we should adhere to our policy of deference to the First Circuit's decision in *Sweeney v. Murray,* which we find persuasive in its analysis of the federal legislation and the regulations promulgated thereunder by the federal agency. Hence, contrary to the appellant's contention, we hold that the lump sum rule as impacted by the OBRA amendments does apply in the instant case, notwithstanding that Ms. Littlefield at the time of the personal injury claim settlement had no other means of subsistence than her AFDC benefits, *i.e.* that she had no other earned income.

The appellant further contends that the net moneys received by her in settlement of her personal injury claim did not constitute "income" within the meaning of the Social Security Act as modified by the OBRA amendments and, hence, was not within the scope of the lump sum rule. We disagree.

The overriding mandate of the Social Security Act in relation to AFDC assistance requires that in determining needs under the program a state must consider all "income and resources" of any child or relative claiming aid to families with dependent children. 42 U.S.C. § 602(a)(7).[4]

Prior to the 1981 OBRA amendments to the Social Security Act (42 U.S.C. § 602(a)(17) which was enacted as Section 2304 of the Omnibus Budget Reconciliation Act of 1981, P.L. 97–35, 95 Stat. 357, 851 (1981)), the receipt of a nonrecurring lump sum of money by an AFDC recipient, if currently available for use, was counted as income in the month of receipt and as a resource thereafter to the extent retained. As income in the month of receipt, it would serve to disqualify the AFDC recipient from eligibility for assistance payments for that month; treated as a resource in the following months, the same lump sum would still impact eligibility if retained, but if expended and used up, the assistance unit, if other conditions of eligibility were met, would be eligible for AFDC payments in the very month next after the exhaustion of the moneys to permissible legal level. *See* Federal Register 46755 (1981). Thus, prior to 1981, courts dealing with personal injury lump sum settlement proceeds received by the minor child recipient of AFDC benefits or the adult caretaker parent were considered a resource except in the month of receipt, and not as income, all within the stated policy practice. *See Langs v. Harder,* 165 Conn. 490, 338 A.2d 458, 80 A.L.R.3d 759 (1973), cert. den. 416 U.S. 994, 94 S.Ct. 2409, 40 L.Ed.2d 774

---

**4.** 42 U.S.C. § 602(a)(7) generally provides that "in determining need, [the State shall] take into consideration any ... income and resources" of any child or relative claiming aid to families with dependent children, or of any other individual (living in the same home as such child or relative) whose needs the State determines should be considered in determining the need of the child or relative claiming such aid. *See Sweeney v. Murray,* 732 F.2d at 1025, n. 6.

(1974); *Francis v. Harris,* 100 N.J.Super. 313, 241 A.2d 844 (1968), aff'd 103 N.J.Super. 440, 247 A.2d 492 (1968), cert. den. 53 N.J. 227, 249 A.2d 601 (1969); *Matter of Estate of Jackson,* 79 N.J. 517, 401 A.2d 517, 520 (1979).

The appellant contends that, notwithstanding the OBRA amendments, cash received as compensatory damages for injury to person or property must continue to be considered as a "resource" and not as "income" as it was under the former policy practice, and that consequently it cannot be viewed as "income" subject to the lump sum rule of § 602(a)(17). On the other hand, the Department of Human Services maintains that the very purpose behind the OBRA amendments and the passage of the lump sum rule was to bring such nonrecurring payment as the one received by the appellant herein within the meaning of "available income" in the statute and the regulation promulgated thereunder. We agree with the DHS.

Title 42 U.S.C. Section 602(a)(17) provides:

(a) A State plan for aid and services to needy families with children must

 * * * * * *

(17) provide that if a person specified in paragraph (8)(A)(i) or (ii) receives in any month an amount of income which, together with all other income for that month not excluded under paragraph (8), exceeds the State's standard of need applicable to the family of which he is a member—

(A) such amount of income shall be considered income to such individual in the month received, and the family of which such person is a member shall be ineligible for aid under the plan for the whole number of months that equals (i) the sum of such amount and all other income received in such month, not excluded under paragraph (8), divided by (ii) the standard of need applicable to such family, and

(B) any income remaining (which amount is less than the applicable

monthly standard) shall be treated as income received in the first month following the period of ineligibility specified in subparagraph (A);

45 C.F.R. Section 233.20(a)(3)(ii)(D) provides:

Need and amount of assistance.

(a) *Requirements for State Plans.* A State Plan for OAA, AFDC, AB, APTD or AABD must, as specified below:

(3) *Income and resources:* OAA, AFDC, AB, APTD, AABD. * * * *

(ii) Provide that, in determining need and the amount of the assistance payment, after all policies governing the reserves and allowances and disregard or setting aside of income and resources referred to in this section have been uniformly applied:

 * * * * * *

(D) Net income available for current use and currently available resources shall be considered; income and resources are considered available both when actually available and when the applicant or recipient has a legal interest in a liquidated sum and has the legal ability to make such sum available for support and maintenance;

47 Fed.Reg. 5648, 5675 (Feb. 5, 1982).

The federal regulation setting out specifically the lump sum rule provides:

When the AFDC assistance unit's income, after applying applicable disregards, exceeds the State need standard for the family because of receipt of nonrecurring lump sum income, the family will be ineligible for aid for the full number of months derived by dividing the sum of the lump sum income and other income by the monthly need standard for a family of that size. Any income remaining from this calculation is income in the first month following the period of ineligibility.

45 C.F.R. § 233.20(a)(3)(ii)(D) (1982).

Pursuant to 42 U.S.C. § 602(a)(7), a state must consider *all* "income and resources" in determining assistance needs under the AFDC program. The statute defines neither "income" nor "resources." The regulations do give some indication of the meaning of "resources" by providing a "general resource limit," the details of which are to be specified in state plans. *See* 45 C.F.R. § 233.20(a)(3)(i)(B)(2) (1982). The resource limit is stated to represent "the amount of real and personal property that can be reserved" by recipients without loss of AFDC payments. 45 C.F.R. § 233.20(a)(3)(i)(B). The regulations further provide that "[l]iquid assets are those properties in the form of cash or other financial instruments which are convertible to cash and include savings accounts, checking accounts, stocks, bonds, mutual fund shares, promissory notes, mortgages, cash value of insurance policies, and similar properties ... ."

■■■ We find that neither the statute nor the accompanying regulations explicitly classify tort claim settlement proceeds either as income or resources. The parties' diametrically opposed positions support our view of ambiguity in the pertinent section of the Social Security Act. In the face of an ambiguous statute, the court must turn to the legislative history. Inexactitude in the meaning of the words of a statute may be dissipated and their intended application affixed in proper context by resort to the historical record. *Tidewater Oil Co. v. United States,* 409 U.S. 151, 157, 93 S.Ct. 408, 413, 34 L.Ed.2d 375 (1972). And, if from an analysis of the legislative history of a specific piece of legislation, such as the OBRA amendments to the Social Security Act, a court can ascertain congressional purpose behind the enactment, this will usually dispose of an issue of statutory construction. *See Chapman v. Houston Welfare Rights Organization,* 441 U.S. 600, 608, 99 S.Ct. 1905, 1911, 60 L.Ed.2d 508, 516 (1979); *Turner v. Prod,* 707 F.2d 1109, 1121 (9th Cir.1983). Also, the interpretation of a statute by an agency charged with its enforcement is a substan-

tial factor to be considered in its construction. *Miller v. Youakim,* 440 U.S. 125, 144, 99 S.Ct. 957, 968, 59 L.Ed.2d 194, 208 (1979). Such administrative interpretations are especially persuasive where, as in the case of the OBRA amendments, the agency participated in developing the amended provisions. Id.

The Senate Budget Committee Report on OBRA clearly points out the effect of existing law in contrast to the workings of the proposed committee amendment:

> *Present law.* Any payments that meet the definition of income—for example, retroactive social security benefits—are counted as income in the month of receipt and any of the payment that is not spent in that month is usually considered as a resource in the months thereafter. *Committee amendment.* The committee believes that lump-sum payments should be considered available to meet the ongoing needs of an AFDC family. *The present treatment of such payments has the perverse effect of encouraging the family to spend such income as quickly as possible in order to retain AFDC eligibility.* The committee amendment would require that such income received in a month be considered available as income in the month it is received and also in future months. (emphasis added).

Senate Report (Budget Committee) No. 97–139, 97th Cong., 1st Sess., June 17, 1981, reprinted in U.S.Code, Cong. & Adm.News, Vol. 7A, Sept.1981, p. 771.

In his testimony before the Committee on Finance, at hearings on his proposed amendment to the Social Security Act, the Secretary of the United States Department of Health and Human Services stated that the purpose of the projected legislation was "to ensure that people assume more personal responsibility for planning the use of income to meet their needs" and that the new law would come into play "[w]hen a large amount of money is received as a lump sum (for example, an inheritance) ...." (Hearings before the Committee on Fi-

nance, U.S. Senate, 97th Cong., 1st Sess., March 17, 1981, p. 33).

The lump sum rule, promulgated by the federal agency charged with administering the program contemporaneously with the OBRA amendment and which tracks the language of the statute very closely and was adopted almost verbatim by Maine, provides in substance that, in determining eligibility for AFDC payments, nonrecurring lump sum income must be considered as available to meet *present* and *future* needs to the extent that it exceeds the state's standards of need as it applies to the assistance unit. Future disqualification is determined by dividing the standard monthly need into the lump sum, the resulting quotient being the number of months of future disqualification.

Thus, the legislative history clearly reveals an effort to give AFDC assistance units an incentive to budget the lump sum payment. This appears as the primary purpose of the OBRA amendments to the AFDC program, the Omnibus Budget Reconciliation Act being framed for the purpose of restraining federal spending, specifically by reducing its growth. *See* House Budget Committee Report. 1981 U.S. Code Cong. & Adm.News at 398. The legislative goal of furnishing AFDC recipients an incentive to budget any lump sum payment for present and future needs would entail all types of lump sum acquisitions, whether labeled income or resources. This would encompass lump sum payments in the nature of tort claim settlement proceeds.

■ So, we conclude that the State Department of Human Services was correct in applying the lump sum rule in the appellant's case on the basis of her receipt of the insurance settlement proceeds of her tort claim for injury to her person and to her property. This construction also best implements the purposes of OBRA to "reduce welfare benefits" and restrain the growth of government spending. *See Betson v. Cohen,* 578 F.Supp. 154 (E.D.Pa.1983).

■ Finally, the appellant contends that the Department of Human Services committed error in the manner of application of the lump sum rule. She points to the Maine Public Assistance Payments Manual (MPAPM), which as part of the lump sum rule provides:

> Sums of money earmarked for specific purposes such as settlement for back medical bills resulting from accidents or injury, compensation for loss of resources, legal fees, etc. are to be excluded as lump sum income, so long as the money is used for the specific purpose intended under the terms of the settlement.

MPAPM, ch. II, § C, p. 9.

The appellant contends that the stated "exclusion clause" of the lump sum rule justifies her rapid disposition of the net settlement proceeds. She argues that the inducement for her to accept the settlement of her tort claim arising out of the motor vehicle accident in which she suffered personal injuries and property loss consisted of her desire to replace her property loss occasioned by the accident and to pay accumulated debts incurred because of her disability due to the accident, and that the execution of her subjective plan of action was a sufficient "earmarking" under the "exclusion clause" and should have been taken into consideration before terminating the AFDC grant. We disagree with such an interpretation of the exclusion clause, because such a construction would frustrate completely the very purpose of the OBRA amendment designed to implement the obvious intent of Congress to temporarily remove eligibility for AFDC payments for certain individuals who receive nonrecurring lump sum payments and to eliminate the incentive to quickly dissipate such moneys, whether income, resources or assets. 42 U.S.C. § 602(a)(17).

Albeit we can see a meritorious purpose in paying past due bills, we must not lose sight of the fact that the AFDC program is designed to aid needy children and was not meant to be used as a scheme to subsidize

the payment of creditors. *See Kelley v. Iowa Department of Social Services,* 197 N.W.2d 192, 200 (Iowa 1972), appeal dismissed 409 U.S. 813, 93 S.Ct. 170, 34 L.Ed.2d 69; *Department of Public Welfare v. Ivy,* 18 Pa.Cmwlth. 348, 351, 336 A.2d 435, 436 (1975).

On the other hand, the Department of Human Services would exclude from the "exclusion clause" *all* nonrecurring lump sum moneys which at the time of receipt are actually available for use by the AFDC recipient to meet the current and future needs of the assistance unit. This would limit the applicability of the "exclusion clause" practically only to cases involving personal injury settlements of minors, where the child's lump sum settlement may not be used by the caretaking parent for the support of the child except upon specific order of a court having jurisdiction of the matter. *See Fitzpatrick v. Illinois Dept. of Public Aid,* 52 Ill.2d 218, 287 N.E.2d 666, 669 (1972); *Godden v. Department of Public Welfare,* 193 Neb. 269, 226 N.W.2d 627 (1975).

▮ The loosely drawn "exclusion clause" was not meant to focus on the availability or non-availability of the settlement proceeds for use by the AFDC recipient, but was rather intended to permit, in calculating the needs of an assistance unit, deduction of that portion of the settlement proceeds as can be identified as representing the amount of back medical bills (usually accumulated before the settlement of any tort claim on account of an accident or injury), the legal fees connected therewith and the incidental loss of resources. Such a construction is consistent with the federal law and regulations, because it limits countable income or resource in calculating need to the net proceeds to the AFDC recipient from these nonrecurring lump sum settlements. Any other construction of the expression "sums of money earmarked for specific purposes" in the manner suggested by the Department of Human Services would practically make the "exclusion clause" almost useless. Earmarking sums of money for specific purposes in tort claim settlements within the scope of the "exclusion clause" does not necessarily require the setting aside of such moneys in a special fund specially labeled, nor does it presuppose a court order particularizing the use to which the money may be put. In the instant case, it is sufficient earmarking for specific purposes within the meaning of the "exclusion clause" if the settlement moneys received by Ms. Littlefield may be seen as actually containing moneys to be used for the payment of back medical bills incurred because of the appellant's injury, for counsel fees due to the litigation and for compensation for the loss of property-resources in the accident. *See Maryland Country Club, Inc. v. United States,* 539 F.2d 345 (4th Cir.1976); *Hitt Fireworks Co. v. Scandinavian American Bank,* 121 Wash. 261, 209 P. 680, 682 (1922). The case of *Sturgell v. Creasy,* 640 F.2d 843 (6th Cir.1981), cited by the appellee, is not apposite.

▮ At the administrative level, no deduction was made under the "exclusion clause" of the amount used by Ms. Littlefield out of the insurance proceeds for the specific purpose of replacing her loss of resources in the accident, including her automobile. Undoubtedly, the insurance settlement was meant to include a sum of money intended or "earmarked" for the specific purpose of compensating her for the loss of resources due to the accident, and, by repaying to her father the loan which permitted her to replace her destroyed motor vehicle, Ms. Littlefield was using the insurance moneys as required by the "exclusion clause" for the specific purpose intended under the terms of the settlement." Failure of the agency to consider such loss of resources as deductible under the "exclusion clause" was error requiring a redetermination of the appellant's period of ineligibility on the existing record.

The entry will be:

Judgment below vacated. So ordered.

Case remanded to the Superior Court with instructions to remand the case to the Department of Human Services for further proceedings consistent with the opinion herein.

All concurring.