**ESTATE OF Marilyn Marie CONNERS, by its Administrator, Howard MEREDITH; Howard Meredith; Lillian Beatty, individuals, as sole heirs of Marilyn Marie Conners, Plaintiffs-Appellees,**

v.

**Dennis Michael O'CONNOR; Fred Valenzuela; Stephen Donoviel; Thaddeus Kostrubala; John Lewis Duncan, Defendants-Appellants.**

No. 87–1644.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Jan. 14, 1988.

Decided May 17, 1988.

John Houston Scott, San Francisco, Cal., for plaintiffs-appellees.

Paul T. Hammerness, Deputy Atty. Gen., San Francisco, Cal., for defendants-appellants.

Before GOODWIN and NELSON, Circuit Judges, and BREWSTER,[*] District Judge.

GOODWIN, Circuit Judge:

State officials with management responsibility for Napa State Hospital appeal the denial of their motion for summary judgment based upon qualified immunity from suit. This type of interlocutory appeal in 42 U.S.C. § 1983 damage actions has become more or less routine following *Mitchell v. Forsyth*, 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985).[1]

In August 1985, Marilyn Conners, a patient at Napa State Hospital, was murdered by a penal code patient. Conners' estate and heirs brought this § 1983 damage action against the state director of mental health and three hospital administrators. If the only basis for recovery were the negligence of the hospital, the state would be immune. And unless the individual defendants personally acted in a manner that clearly violated the murder victim's constitutional rights, these defendants are clothed with qualified immunity under *Harlow v. Fitzgerald*, 457 U.S. 800, 813–19, 102 S.Ct. 2727, 2735–38, 73 L.Ed.2d 396 (1982). The only question now reviewable is whether these defendants are immune as a matter of law. *See Mitchell*, 472 U.S. at 526, 528 & n. 9, 105 S.Ct. at 2815, 2816 & n. 9.

Conners was admitted to Napa State Hospital in 1985. She was lured from her ward by a penal code patient, John Duncan, who, despite his demonstrated homicidal

---

* The Honorable Rudi M. Brewster, United States District Judge, Southern District of California, sitting by designation.

1. *See, e.g., Velasquez v. Senko*, 813 F.2d 1509, 1511 (9th Cir.1987); *White by White v. Pierce County*, 797 F.2d 812, 814–15 (9th Cir.1986); *Kraus v. County of Pierce*, 793 F.2d 1105, 1108–

propensities,[2] was permitted to roam the grounds of the hospital under official and de facto policies then in effect. Duncan led Conners to a remote part of the hospital grounds, where he raped and strangled her. Duncan pled *nolo contendere* to charges of second-degree murder and assault with intent to commit rape.

Conners' estate alleged in the amended complaint that Dennis O'Connor and three hospital administrators—Executive Director Fred Valenzuela, Clinical Director Stephen Donoviel, and Medical Director Thaddeus Kostrubala—were grossly negligent and recklessly indifferent to patient safety in approving ground privileges for the penal code patients. This conduct was alleged to demonstrate official indifference to the constitutional right of the victim to a safe environment while confined under state authority. *See Youngberg v. Romeo,* 457 U.S. 307, 102 S.Ct. 2452, 73 L.Ed.2d 28 (1982).

The district court denied summary judgment based upon qualified immunity to suit, finding that there existed genuine issues of material fact. The district court relied primarily upon an affidavit submitted by Dr. William Schwartzman, Conners' psychiatrist at the time of her death, in finding that the estate had demonstrated a jury question as to the defendants' compliance with *Youngberg.*

On appeal, the defendants argue that the trial court erred in finding that the facts alleged could support a finding that they were not entitled to qualified immunity. Our analysis is set forth by *Mitchell:*

An appellate court reviewing the denial of the defendant's claim of immunity need not consider the correctness of the plaintiff's version of the facts, nor even determine whether the plaintiff's allegations actually state a claim. All it need determine is a question of law: whether the legal norms allegedly violated by the

defendant were clearly established at the time of the challenged actions. . . .

472 U.S. at 528, 105 S.Ct. at 2816.

The "clearly established law" test leads us to *Youngberg,* 457 U.S. at 307, 102 S.Ct. at 2452, which sets forth the constitutional rights afforded to patients who have been involuntarily committed to a state mental hospital. *Youngberg* acknowledged that patients retain "liberty interests in safety" but held that such "interests are not absolute," given the need to promote other therapeutic goals. *Id.* at 319–20, 102 S.Ct. at 2459–60; *see Hoptowit v. Spellman,* 753 F.2d 779, 784 (9th Cir.1985) (observing that "[p]ersons involuntarily confined by the state have a constitutional right to [reasonably] safe conditions of confinement"). "The question then is not simply whether a liberty interest has been infringed but whether the extent or nature of the restraint or lack of absolute safety is such as to violate due process." *Youngberg,* 457 U.S. at 320, 102 S.Ct. at 2460. Recognizing the need to "show deference to the judgment exercised by a qualified professional," *id.* at 322, 102 S.Ct. at 2461. *Youngberg* stated:

[T]he decision, if made by a professional, is presumptively valid; liability may be imposed only when the decision by the professional is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible actually did not base the decision on such a judgment.

*Id.* at 323, 102 S.Ct. at 2462 (footnotes omitted).

Subsequent to *Youngberg,* the Court decided two companion cases concerning the degree of official misconduct necessary to give rise to liability under 42 U.S.C. § 1983 (1982) for violations of the due process clause. *See Daniels v. Williams,* 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986);

10 (9th Cir.1986), *cert. denied,* — U.S. —, 107 S.Ct. 1571, 94 L.Ed.2d 763 (1987).

**2.** Duncan had been admitted to Napa State Hospital after he pled not guilty by reason of insanity to a charge of rape and murder of another young woman. Approximately two or three

weeks before Conners' murder, Duncan had committed an assault with a deadly weapon and attempted rape on another female patient. The man's character was thus well known to someone in the hospital, if not to these named defendants.

**1208**

*Davidson v. Cannon,* 474 U.S. 344, 106 S.Ct. 668, 88 L.Ed.2d 677 (1986).

We here are presented with an issue which, to the best of our knowledge, has been addressed by no other court: Do *Daniels* and *Davidson* impose scienter, or other culpability requirements such as "conscious indifference," that supersede the discretionary balancing standard of review appropriate under *Youngberg?*

In *Daniels,* the Court held that "the Due Process Clause is simply not implicated by a *negligent* act of an official causing unintended loss of or injury to life, liberty or property." *Daniels,* 474 U.S. at 328, 106 S.Ct. at 663 (emphasis in original); *see Davidson,* 474 U.S. at 348, 106 S.Ct. at 670 (observing that due process protections "are just not triggered by lack of due care by prison officials"). The *Daniels* Court reserved the question "whether something less than intentional conduct, such as recklessness or 'gross negligence,' is enough to trigger the protections of the Due Process Clause." *Daniels,* 474 U.S. at 334 n. 3, 106 S.Ct. at 667 n. 3.

In the absence of additional guidance from the Supreme Court, our circuit has followed earlier case law holding that the due process clause can be implicated by certain types of gross negligence. *See Ketchum v. County of Alameda,* 811 F.2d 1243, 1246 & n. 3 (9th Cir.1987) (negligent failure to prevent a prison inmate from escaping does not make prison management liable to rape victims); *Bergquist v. County of Cochise,* 806 F.2d 1364, 1370 (9th Cir.1986) (inadequate training plus improper supervision of Drug Enforcement Administration agents resulting in armed attack on wrong target can create § 1983 liability if facts add up to gross negligence).

Under *Youngberg*'s balancing test, the risk of harm and the burden on the state are weighed in examining discretionary management choices for reasonableness. Liability may be imposed on a professional state officer only when his or her decision is so objectively unreasonable as to demonstrate that he or she actually did not base the challenged decision upon professional judgment. *See Youngberg,* 457 U.S. at 323, 102 S.Ct. at 2462. We believe that this standard is equivalent to that required in ordinary tort cases for a finding of conscious indifference amounting to gross negligence. Certainly, the *Youngberg* standard is far more stringent than that required for a finding of negligence, which may be demonstrated by a professional's mere failure to exercise the level of care expected of other professionals in the same field. We therefore hold that the inquiry relevant under *Youngberg* has not been affected by the Court's intervening decisions in *Daniels* and *Davidson.*

*Youngberg* was clearly established law in August 1985, at the time of the events at the core of this case. Under *Mitchell,* the relevant inquiry therefore resolves itself into the question whether the facts alleged by the plaintiff would violate rights described in *Youngberg. See Mitchell,* 472 U.S. at 528 & n. 9, 105 S.Ct. at 2816 & n. 9. We find that the plaintiffs have presented evidence sufficient to preclude summary judgment based upon qualified immunity.

The plaintiffs rely primarily upon the affidavit of Dr. Schwartzman to establish the existence of a factual question on the violation of clearly established rights. A psychiatrist at Napa State Hospital for more than seven years, Dr. Schwartzman also had ten years of experience with violent mental patients. Dr. Schwartzman expressed a professional opinion that the hospital's "approach in dealing with the assessment and determination of risk from violence, to non-violent patients from violent ones, is grossly and totally inadequate." He stated that penal code patients are not given special consideration. Because assessment criteria are informal and vague, he continued, "patients with considerable violence potential are granted ground passes ... without careful regard to situations likely to evoke their violent tendencies." Schwartzman stated that hospital staff have received no training on assessment of patients' potential for dangerous behavior. He also claimed that the hospital has been "glaringly deficient in

developing any kind of specialized treatment programs for the Penal Code group of patients." He claimed that, despite a history of violence among penal code patients at the hospital, the hospital staff made no attempt to rectify the problems.[3]

The facts alleged in the Schwartzman affidavit, if proven, could reasonably support a trier's finding that the defendants were indifferent to patient safety and had made "such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that [they] actually did not base the decision on such a judgment." *Youngberg*, 457 U.S. at 323, 102 S.Ct. at 2462. The affidavits presented by the defendants contradicted Schwartzman's claims. The pleadings and affidavits thus presented a genuine issue of fact. The trial court correctly denied the motion. We therefore must affirm the denial of summary judgment. We express no opinion on which version of the facts is most likely to prevail.

Appeal dismissed with costs plus attorney fees to be fixed by the trial court if the plaintiffs prevail on the merits.

---

**3.** Dr. Schwartzman's views are involved in another type of litigation arising out of his discharge by the hospital. *See Schwartzman v.*
*Valenzuela,* 846 F.2d 1209 (9th Cir.1988), decided this date.