54 P.3d 342

Cheryl WEATHERFORD, as guardian ad litem for Michael L., a minor, Plaintiff–Appellant,

v.

STATE of Arizona; Claudette Washington, individually and in her capacity as an employee of the State of Arizona; Shirley Lewis, individually and in her capacity as an employee of the State of Arizona; Parthenia Gibson, individually and in her capacity as an employee of the State of Arizona, Defendants–Appellees.

Michael L., a minor, by and through his guardian Cheryl Weatherford, Plaintiff–Appellee,

v.

State of Arizona, Defendant–Appellant.

Nos. 1 CA–CV–01–0289, 1 CA–CV–01–0496.

Court of Appeals of Arizona, Division 1, Department D.

Sept. 10, 2002.

Laurence M. Berlin, Tucson, Attorney for Cheryl Weatherford.

Janet Napolitano, Attorney General by John Wolfinger, Assistant Attorney General, Paula S. Bickett, Assistant Attorney General, Phoenix, Attorneys for State of Arizona.

Wilenchik & Bartness, PC by Dennis I. Wilenchik, Phoenix, Attorneys for Claudette Washington and Shirley Lewis.

Martin, Hart & Fullerton by James R. Hart, II, Mesa, Attorneys for Parthenia Gibson.

## OPINION

PATTERSON, Judge.

¶ 1 In these consolidated appeals, we consider the scope of protective services workers' immunity for negligence claims against the State of Arizona and three individuals employed as social workers by Protective Services. We also address whether qualified immunity attaches to the social workers' activities when due process violations under 42 U.S.C. section 1983 (Supp.1996)(" § 1983") are alleged.

## I. BACKGROUND

¶ 2 This case arises out of alleged sexual assaults on twelve-year-old Michael L. by two minors held with him at the Alice Peterson Shelter. The assaults reportedly occurred over the course of four months in 1996 and 1997.

¶ 3 On November 14, 1996, the State of Arizona removed Michael L. from his home because of unsanitary conditions. Claudette Washington was his intake social worker, and arranged for placement at the emergency shelter. In mid-December 1996, Parthenia Gibson became Michael's caseworker. Shirley Lewis supervised both Washington and Gibson.

¶ 4 It is undisputed that Gibson, Washington, and Lewis failed to:

1. Prepare an initial case plan, including a safety plan, until it was seventy-one days late and the alleged sexual assaults had purportedly begun;

2. Assess Michael L.'s needs and how he matched up to the other shelter residents;

3. Visit the shelter within twenty-four hours of Michael L.'s placement; and

4. Make more than two of the sixteen required weekly supervisory visits to the shelter between November 14, 1996 and disclosure of the alleged sexual abuse on March 4, 1997.

Based upon these facts, Cheryl Weatherford, as guardian ad litem for Michael L., sued the State of Arizona, Washington, Gibson, and Lewis (collectively "defendants") for negligence and violation of Michael L.'s constitutional rights under § 1983. The trial court granted separate summary judgment motions in favor of defendants based upon qualified immunity and protective services immunity and dismissed Weatherford's claims in a Judgment (the "Original Judgment") signed on April 4, 2001. Weatherford appealed this judgment on May 2, 2001.

¶ 5 After Weatherford filed her appeal, the trial court *sua sponte* reviewed its judgment granting immunity to the state. After its review, the trial court amended its judgment (the "Amended Judgment") stating that the state was not a "person" entitled to protective services immunity under A.R.S. § 8–546.04(A) (1988) (renumbered as A.R.S. § 8–805).

¶ 6 After appealing the Amended Judgment, the state filed a Motion to Determine Jurisdiction on the first appeal, and Weatherford responded. We ruled that in the Original Judgment, the trial court granted relief to the state and the three named appellees. Further, we ruled that the Amended Judgment was appealable by the state pursuant to A.R.S. § 12–2101(C) (1994). Moreover, we consolidated the appeals from the Original Judgment and the Amended Judgment and ordered the parties to brief the issues raised by both Judgments.

¶ 7 Accordingly, our tasks are to determine whether: (1) Weatherford's claims against the state are based only upon respondeat superior for the acts of Washington, Gibson, and Lewis; and (2) summary judgment was warranted on the protective services immunity and the qualified immunity defenses.[1]

## II. DISCUSSION

### A. Jurisdiction

¶ 8 We review the determination of the superior court's jurisdiction de novo. *Samaritan Health Sys. v. Ariz. Health Care Cost Containment Sys. Admin.*, 198 Ariz. 533, 536, ¶ 13, 11 P.3d 1072, 1075 (App.2000).

### B. Respondeat Superior Liability

¶ 9 The state also contends that Weatherford asserted only respondeat superior claims based upon the actions of Wash-

---

1. In its combined answering and opening brief, the state argues that the trial court did not have jurisdiction to amend the Original Judgment. The Original and Amended Judgments are based upon a determination of whether the state has immunity under A.R.S. § 8–546.04(A) (1989). Issues of statutory interpretation are subject to

de novo review. *State Comp. Fund v. Superior Court*, 190 Ariz. 371, 374–75, 948 P.2d 499, 502–03 (App.1997). Therefore, regardless of jurisdiction, both judgments present the same issue and the same standard of review. As such, we need not address the issue of jurisdiction raised by the state.

ington, Lewis, and Gibson. The record reflects otherwise.

¶ 10 Weatherford alleged in her Third Amended Complaint:

13. Defendant State of Arizona and its social worker defendants Washington, Lewis and Gibson were under duties to provide reasonable case management services to the minor, Michael L., at all times material hereto.

14. Defendant State of Arizona was under a duty to provide reasonable licensing and licensing supervision of defendants Alice Peterson Shelter and Prehab of Arizona, for the care, protection and safety of the minor, Michael L., at all times material hereto.

. . . .

16. Each and all of defendants State of Arizona, social workers Washington, Lewis and Gibson, and Alice Peterson Shelter and Prehab of Arizona, breached their duties to Michael L. by failing to provide reasonable case management (i.e., supervision of the child's care and supervision of the child's case manager), and by failing to provide reasonable residential shelter care, licensing and licensing supervision. . . .

¶ 11 As Weatherford points out, state liability under the Third Amended Complaint does not arise entirely from the actions of Gibson, Lewis, and Washington. For example, part of the state's liability stems from improper licensing, which did not involve the individual social worker defendants. Moreover, other state employees were responsible for putting the perpetrators in the same residence with Michael L. Accordingly, these claims survive the summary judgments based upon the immunity of Washington, Lewis, and Gibson.

■ ¶ 12 Weatherford also argues that a government entity may have liability apart

from respondeat superior liability. As the Arizona Supreme Court recognized in *City of Phoenix v. Yarnell,* direct liability is available when the entity is "alleged to have caused a constitutional tort through 'a policy statement, ordinance, regulation or decision officially adopted and promulgated by that body's officers.' "[2] 184 Ariz. 310, 317, 909 P.2d 377, 384 (1995)(quoting *City of St. Louis v. Praprotnik,* 485 U.S. 112, 121, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988)). Instead of identifying such an official statement or policy, Weatherford contends that the state's independent liability derives from "the combined acts and omissions of its employees." A fair reading of the Third Amended Complaint likewise convinces us that Weatherford raises no attack on an official policy or statement. Rather, the thrust of this pleading is that the state social workers failed to follow the policies and procedures in place. Accordingly, we reject Weatherford's argument that the Third Amended Complaint alleges liability on this basis.

## C. Protective Services Immunity or Qualified Immunity

■ ¶ 13 The defendants further argue that summary judgment was warranted on the immunity issues. On appeal from a summary judgment, we must determine de novo whether there are any genuine issues of material fact, and if not, whether the trial court erred in applying the law. *Saenz v. State Fund Workers' Comp. Ins.,* 189 Ariz. 471, 473, 943 P.2d 831, 833 (App.1997). We view the evidence in the light most favorable to the party against whom summary judgment was entered. *Angus Med. Co. v. Digital Equip. Corp.,* 173 Ariz. 159, 162, 840 P.2d 1024, 1027 (App.1992). Qualified immunity is a question of law subject to de novo review.

---

**2.** The state mistakenly relies upon *Mulhern v. City of Scottsdale,* 165 Ariz. 395, 799 P.2d 15 (App.1990), and *Torres v. Kennecott Copper Corp.,* 15 Ariz.App. 272, 488 P.2d 477 (1971). Both cases fail to shed light on the independent liability and immunity issues because the respective courts determined only that there was no underlying negligence.

Equally unpersuasive is the state's reliance on *L.A.R. v. Ludwig,* 170 Ariz. 24, 821 P.2d 291

(App.1991); *Storch v. Silverman,* 186 Cal.App.3d 671, 231 Cal.Rptr. 27 (1986); and *D.L.C. v. Walsh,* 908 S.W.2d 791 (Mo.Ct.App.1995). All these cases apply reporting immunity, which is similar to protective services immunity because it insulates those who report suspected child abuse or neglect. As Weatherford points out, however, no such claims exist in this case.

*Yvonne L. v. New Mexico Dep't of Human Servs.*, 959 F.2d 883, 891 (10th Cir.1992).

### 1. Arizona's Qualified Immunity Statute

¶ 14   Arizona Revised Statutes § 8–546.04(A)(1989) [3] provides:

> Any person making a complaint, or providing information or otherwise participating in the program authorized by this article shall be immune from any civil or criminal liability by reason of such action, unless such person acted with malice or unless such person has been charged with or is suspected of abusing, abandoning or neglecting the child or children in question.

¶ 15   The trial court concluded that the defendants were "participating in the program authorized by this article," and consequently were shielded by qualified immunity. Weatherford contends, however, that they are not immune because that provision is inapplicable.

■■■■ ¶ 16   Because liability of public servants is the rule and immunity is the exception, courts must construe statutory immunity provisions in a restrained and narrow manner. *Fid. Sec. Life Ins. Co. v. Ariz. Dep't of Ins.*, 191 Ariz. 222, 225, ¶ 7, 954 P.2d 580, 583 (1998). By its terms, the immunity in A.R.S. § 8–546.04(A) extends only to conduct under the "article," meaning Article 3 of Title 8, Chapter 5 covering "Protective Services." This article does not apply to Weatherford's claims, which deal with the defendants' duties of care, protection, and supervision after Michael L. was taken from his home. Rather, these claims arose under the "Child Welfare and Placement" statutes in Article 1 of Title 8, Chapter 5 which were in effect. *See generally* A.R.S. § 8–511(A),(B)(Supp.1996)(requiring an investigation and a case plan for children in their first out-of-home placement and specifying the plan's contents); 8–511(C)(Supp.1996)(requiring the case plan's submission no later than the hearing on the juvenile dependency petition).[4]

¶ 17   The legislative history confirms the limited reach of the qualified immunity statute. In 1970, the Arizona Legislature adopted the Protective Services Act as Chapter 192,[5] and the Child Welfare and Foster Home Placement Act as Chapter 205.[6] At that time, the immunity provision referred to the "act," not the "article." A.R.S. § 8–546.04(A)(Supp.1970).[7] As originally drafted, the "act" refers to Chapter 192, which adds the new protective services article. The "act" and the "article" covered by the qualified immunity provision of A.R.S. ˙ § 8–546.04(A) thus contain the same protective services provisions. Accordingly, the immunity statute does not apply to the claims in this case.[8]

¶ 18   The trial court, however, relied upon a reference to "the program" authorized under the article and concluded that A.R.S. § 8–546.04(A) immunized activities under all four articles of Chapter 10. Assuming arguendo that this construction is correct, the immuni-

**3.** A.R.S. § 8–546.04 has been renumbered as A.R.S. § 8–805.

**4.** Defendants confuse these functions and mistakenly rely upon *Nation v. Colla*, 173 Ariz. 245, 841 P.2d 1370 (App.1991). In that case, we acknowledged that immunity applies to social workers who prepare and present information to the prosecutor for the initiation and filing of child dependency actions. *Id.* at 252, 841 P.2d at 1377. That case has nothing to do with defendants' responsibilities to children already in their custody.

Defendants' reliance upon *Meyers v. Contra Costa County Dep't of Soc. Servs.*, 812 F.2d 1154 (9th Cir.1987), *cert. denied*, 484 U.S. 829, 108 S.Ct. 98, 98 L.Ed.2d 59 (1987) is also misplaced. That case also concerned prosecutorial immunity for the initiation of dependency proceedings. *Coverdell v. Dep't of Soc. and Health Servs.*, 834 F.2d 758 (9th Cir.1987), is also distinguishable, because it concerned prosecutorial immunity for obtaining an order to place a child in a temporary shelter, as well as judicial immunity for activities undertaken in execution of a valid court order. None of Weatherford's claims arises out of such facts.

**5.** 1970 Ariz. Sess. Laws, ch. 192, §§ 3–4.

**6.** 1970 Ariz. Sess. Laws, ch. 205, § 1.

**7.** The word "act" was changed to "article" in the same legislative session, and the statute was revised. *See* A.R.S. § 8–546.04.

**8.** We find that Weatherford's arguments below sufficiently raised the statutory construction issue.

ty statute still would not apply. Weatherford's claims arise under Chapter 5, not Chapter 10.

¶ 19 The state mistakenly argues that the reorganization of Title 8 in 1999, after the relevant events occurred, somehow supports its immunity arguments. In fact, the Arizona Legislature transferred the pre-placement investigation requirement to A.R.S. § 8–813 (1999), because the investigation is necessary to the initial out-of-home placement. The legislature did not transfer the ongoing case worker duties to A.R.S. § 8–813 or anywhere else in the Protective Services Article, now located in Chapter 10, Article 1. Therefore, the revisions fail to support the state's interpretation of protective services immunity.

¶ 20 Finally, the state argues that protective services immunity applies "pending the court's determination of [the child's] dependency petition." That determination was made before Gibson relieved Washington and before Michael's second alleged perpetrator arrived at the Alice Peterson Shelter.

¶ 21 In sum, we hold that the statutes fail to support the trial court's immunity ruling. Our resolution of this issue obviates the need to consider whether an employee's immunity would relieve the state of liability.

### 2. Qualified Immunity

¶ 22 Weatherford also appeals the trial court's grant of summary judgment on the § 1983 claim. Section 1983 imposes liability upon "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage ... subjects, or causes to be subjected, any citizen of the United States or other person ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws...."

■■■■ ¶ 23 To prevail on such claims, a plaintiff must overcome a qualified immunity defense by proving: (1) the defendants violated one of the plaintiff's clearly established rights; and (2) the requisite mental state. *Harlow v. Fitzgerald,* 457 U.S. 800, 815, 819, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Federal law controls immunity questions under § 1983. *See Martinez v. California,* 444

U.S. 277, 284 n. 8, 100 S.Ct. 553, 62 L.Ed.2d 481 (1980).

### a. Rights to Reasonable Safety in Foster Care

■■■■ ¶ 24 Weatherford contends that Michael L. had a clearly established right in 1996 and 1997 to be free of unnecessary and unreasonable harm while in state-regulated foster care. Although this right must have been sufficiently clear that reasonable officials would understand that their actions would violate it, the precise action or omission in question need not have previously been held unlawful. *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). "Moreover, a right need not have been addressed by the Supreme Court to be established; such a rule 'could have the practical effect of converting qualified immunity into absolute immunity.' " *Yvonne L.,* 959 F.2d at 892 (quoting *Benson v. Allphin,* 786 F.2d 268, 275 (7th Cir.1986)).

■■■■ ¶ 25 The United States Supreme Court has not expressly decided the extent of children's due process rights to safety in foster care. In *DeShaney v. Winnebago County Dep't of Soc. Servs.,* 489 U.S. 189, 201, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989), the Court found no affirmative duty of the state to protect a child in his parents' custody. In a footnote, however, the Court recognized that

[h]ad the State by the affirmative exercise of its power removed Joshua from free society and placed him in a foster home operated by its agents, we might have a situation sufficiently analogous to incarceration or institutionalization to give rise to an affirmative duty to protect. Indeed, several Courts of Appeals have held, by analogy to *Estelle* [v. Gamble, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)] and *Youngberg,* that the State may be held liable under the Due Process Clause for failing to protect children in foster homes from mistreatment at the hands of their foster parents.

*DeShaney,* 489 U.S. at 201 n. 9, 109 S.Ct. 998 (citations omitted).

¶ 26 In *Youngberg v. Romeo,* 457 U.S. 307, 324, 102 S.Ct. 2452, 73 L.Ed.2d 28 (1982), the Supreme Court held that mentally challenged persons committed to state institutions have a Fourteenth Amendment substantive due process right to "reasonable care and safety." Thus, in 1982, it was established that "when the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being." *DeShaney,* 489 U.S. at 199–200, 109 S.Ct. 998. *Youngberg* arguably reaches the constitutional right Weatherford asserts to be clearly established.

¶ 27 Moreover, Weatherford points out that decisions from eight federal courts support the assertion of a clearly established right to reasonable safety while in foster care. *See Norfleet v. Arkansas Dep't of Human Servs.,* 989 F.2d 289, 293 (8th Cir.1993) (recognizing a clearly established constitutional right to reasonably safe foster care in light of other circuit court precedents); *LaShawn A. v. Dixon,* 762 F.Supp. 959, 992–93 (D.D.C.1991) (finding a constitutional liberty interest in appropriate placement and case planning to prevent harm to children in the district's custody), *aff'd and remanded on other grounds sub nom. LaShawn A. v. Kelly,* 990 F.2d 1319 (D.C.Cir.1993); *Yvonne L.,* 959 F.2d at 893 (10th Cir.1992) (*Youngberg* "clearly alerted persons in the positions of defendants that children in the custody of a state had a constitutional right to be reasonably safe from harm."); *K.H. ex rel. Murphy v. Morgan,* 914 F.2d 846, 851–53 (7th Cir.1990) (finding a constitutional right not to be placed with a foster parent whom caseworkers know or suspect is likely to abuse or neglect a foster child; the state placed the child in a series of foster homes and failed to take steps to prevent the child from deteriorating physically and psychologically from mistreatment and frequent moves); *Meador v. Cabinet for Human Res.,* 902 F.2d 474, 476 (6th Cir.) ("Due process extends the right to be free from the infliction of unnecessary harm to children in state-regulated foster homes."), *cert. denied,* 498 U.S. 867, 111 S.Ct. 182, 112 L.Ed.2d 145 (1990); *Griffith v. Johnston,* 899 F.2d 1427, 1439 (5th Cir.1990) (en banc) (requiring constitutionally adequate care when the state creates a special relationship with children by removing them from their natural home and placing them under state supervision), *cert. denied,* 498 U.S. 1040, 111 S.Ct. 712, 112 L.Ed.2d 701 (1991); *Doe v. New York City Dep't of Soc. Servs.,* 649 F.2d 134 (2d Cir.1981)(holding that a child in state custody has a constitutional right not to be placed in a foster care setting known to be unsafe), *cert. denied,* 464 U.S. 864, 104 S.Ct. 195, 78 L.Ed.2d 171 (1983); *Taylor ex rel. Walker v. Ledbetter,* 818 F.2d 791, 797 (11th Cir.1987) (en banc) ("[A] child involuntarily placed in a foster home is in a situation so analogous to a prisoner in a penal institution and a child confined in a mental health facility that the foster child may bring a section 1983 action for violation of fourteenth amendment rights."), *cert. denied,* 489 U.S. 1065, 109 S.Ct. 1337, 103 L.Ed.2d 808 (1989).

¶ 28 Defendants contend that *Babcock v. Tyler* ("*Babcock I* "), 884 F.2d 497 (9th Cir. 1989), supports their argument, but their reliance upon that case is misplaced. As the trial court correctly recognized, *Babcock I* relied upon a false premise and is not controlling. The Ninth Circuit found in *Babcock I* that case workers were entitled to absolute immunity because the court incorrectly assumed that the placements were subject to disposition hearings for dependency; in fact, they were subject only to review hearings for short-term placements. *Babcock v. State,* 116 Wash.2d 596, 809 P.2d 143, 148 (1991) ("*Babcock II* "). Moreover, in *Babcock I* the case workers made a recommendation to the court and were consequently covered by absolute immunity. *Babcock I,* 884 F.2d at 501–02. In contrast, the juvenile court in this case declared Michael L., a ward of the state, did not ask for a placement recommendation, and did not later make an independent determination based upon the case workers' information. Accordingly, *Babcock I* does not apply here.

¶ 29 In light of *Youngberg* and the federal precedents, we hold that the right to reasonable safety in foster care was clearly established by 1996. Accordingly, the trial court erred in granting summary judgment on the

§ 1983 claim. Our resolution of this issue obviates the need to consider whether an employee's immunity would relieve the state of liability.

### b. Professional Judgment Standard

 ¶ 30 Weatherford also challenges the trial court's conclusion that the § 1983 claim sounded in negligence and did not demonstrate the required malice. This holding misconceives the applicable standard and the nature of Weatherford's claim. In *Youngberg,* the Supreme Court held that state officials would be shielded from liability unless the defendants showed that they had failed to exercise their professional judgment. 457 U.S. at 323, 102 S.Ct. 2452. Failure to exercise professional judgment does not mean mere negligence, nor does it imply actual knowledge. It does imply "abdication of the duty to act professionally in making the placements." *Yvonne L.,* 959 F.2d at 894. That is exactly what Weatherford has alleged.[9]

### III. CONCLUSION

¶ 31 We hold that the trial court had jurisdiction to issue the Second Judgment. In addition, we reverse the Original Judgment dismissing Weatherford's negligence and § 1983 claims on the basis of qualified immunity, and remand for further proceedings consistent with this opinion.

CONCURRING: WILLIAM F. GARBARINO, Presiding Judge and JOHN C. GEMMILL, Judge.

---

9. Weatherford also argues that the failure to exercise the professional judgment standard has replaced the deliberate indifference standard. To the extent that there is a difference, we agree that the *Youngberg* standard applies. *Youngberg,* 457 U.S. at 314, 102 S.Ct. 2452. The rationale

of the professional judgment standard is that foster children, like involuntarily committed patients, are "entitled to more considerate treatment and conditions" than criminals covered by the deliberate indifference standard. *Id.* at 321–22, 102 S.Ct. 2452.