SUPREME COURT OF ARIZONA
En Banc

| | |
|---|---|
| CHERYL WEATHERFORD, as guardian ad litem for MICHAEL L., a minor, | ) ) ) | Arizona Supreme Court No. CV-02-0369-PR |

CHERYL WEATHERFORD, as guardian ad litem for MICHAEL L., a minor,    )  Arizona Supreme Court
                                                                      )  No. CV-02-0369-PR
                                                                      )
                                                                      )  Court of Appeals
            Plaintiff-Appellant,                                      )  Division One
                                                                      )  No. 1 CA-CV 01-0289
                v.                                                    )      1 CA-CV 01-0496
                                                                      )      (Consolidated)
                                                                      )
STATE OF ARIZONA; CLAUDETTE                                           )
WASHINGTON, individually and in                                       )  Maricopa County
her capacity as an employee of                                        )  Superior Court
the State of Arizona; SHIRLEY                                         )  Nos. CV 98-021291
LEWIS, individually and in her                                        )      CV 98-021291-2
capacity as an employee of the                                        )
State of Arizona; PARTHENIA                                           )
GIBSON, individually and in her                                       )
capacity as an employee of the                                        )
State of Arizona,                                                     )
                                                                      )
            Defendants-Appellees.                                     )
_____)  **O P I N I O N**
                                                                      )
MICHAEL L., a minor, by and                                          )
through his guardian CHERYL                                           )
WEATHERFORD,                                                          )
                                                                      )
            Plaintiff-Appellee,                                       )
                                                                      )
                v.                                                    )
                                                                      )
STATE OF ARIZONA,                                                     )
                                                                      )
            Defendant-Appellant.                                      )
                                                                      )
_____)

Appeal from Superior Court of Maricopa County
Nos. CV 98-021291 and CV 98-021291-2
The Honorable Edward O. Burke
The Honorable Johnathan H. Schwartz
**AFFIRMED IN PART; REVERSED IN PART; REMANDED**

Opinion of Court of Appeals Division One
203 Ariz. 313, 54 P.3d 342 (App. 2002)
**VACATED IN PART; APPROVED IN PART**

Laurence M. Berlin                                    Tucson
Attorney for Cheryl Weatherford

Terry Goddard, Attorney General                       Phoenix
     by   Paula S. Bickett, Chief Counsel
          Civil Appeals Section
          Assistant Attorney General
Attorneys for Parthenia Gibson,
Claudette Washington, Shirley Lewis, and
the State of Arizona

Martin, Hart & Fullerton                                 Mesa
     by   James R. Hart, II
Attorneys for Parthenia Gibson

Wilenchik & Bartness, PC                              Phoenix
     by   Dennis I. Wilenchik
Attorneys for Claudette Washington and Shirley Lewis

---

M c G R E G O R, Vice Chief Justice

¶1      This case requires us to determine whether and under what circumstances a child placed in a foster care facility may bring an action based upon 42 U.S.C. § 1983 (2003) against individual state workers for violating the foster child's substantive due process rights under the United States Constitution.  We exercise jurisdiction pursuant to Article VI, Section 5.3 of the Arizona Constitution, Arizona Revised Statutes (A.R.S.) § 12-120.24 (2003), and Rule 23 of the Arizona Rules of Civil Appellate Procedure.

**I.**

**A.**

¶2      This case arises out of the alleged sexual assault of twelve-year-old Michael L. by two minors held at the Alice Peterson Shelter (the Shelter), a foster care facility.  The

2

assaults reportedly occurred over the course of four months in 1996 and 1997, after Claudette Washington, Michael's intake social worker, had arranged for Michael's placement at the Shelter following his removal from his home because of unsanitary conditions. In mid-December 1996, Parthenia Gibson became Michael's social worker. Shirley Lewis supervised both Washington and Gibson throughout Michael's placement at the Shelter.

¶3    Cheryl Weatherford, acting as Michael's guardian ad litem, sued the State of Arizona, Washington, Gibson, and Lewis for negligence and for depriving Michael of his constitutional rights, in violation of § 1983. During summary judgment proceedings, Washington, Gibson, and Lewis did not dispute that, acting in their capacity as social workers, they failed to comply with various agency requirements, including failures to timely complete an initial case plan, to assess Michael's needs and his compatibility with other Shelter residents, and to visit the Shelter within twenty-four hours of Michael's placement. In addition, they did not dispute that they made only two of the sixteen required weekly supervised visits to the Shelter between November 14, 1996, and the disclosure of the alleged sexual abuse on March 4, 1997.

¶4    The superior court nonetheless granted summary judgment in favor of each of the defendants based upon qualified immunity, 42 U.S.C. § 1983, and protective services immunity,

3

A.R.S. § 8-805.A (2001). The court of appeals reversed the order dismissing Weatherford's negligence and § 1983 claims. *Weatherford v. State*, 203 Ariz. 313, 320 ¶ 31, 54 P.3d 342, 349 (App. 2002). The court held that a foster child's right to reasonable safety while in foster care was clearly established in 1996 and that a social worker's failure to exercise professional judgment in the placement and monitoring of a child in state foster care may subject the social worker to individual liability under § 1983. *Id.* at 319-20 ¶¶ 29-30, 54 P.3d at 348-49.[1]

**B.**

¶5 Section 1983 imposes liability on one who, under color of law, deprives a person of any "rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. Government officials performing discretionary functions, however, receive qualified immunity from § 1983 actions unless their conduct violated a clearly established constitutional or federal statutory right of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

¶6 To overcome the social workers' qualified immunity defense, Weatherford bears the initial burden of proving a violation of a clearly established constitutional or statutory

---

[1] The court of appeals decided a number of other issues affecting defendants' liability. We granted review only of the question pertaining to § 1983 liability.

4

right. A right is "clearly established" when "[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton,* 483 U.S. 635, 640 (1987). Establishing liability requires more than alleging a "violation of extremely abstract rights." *Id.* at 639. An official's specific action, however, need not previously have been held unlawful. *Id.* at 640. Rather, the unlawfulness must be apparent in light of preexisting law. *Id.* If Weatherford is able to show a violation of Michael's clearly established constitutional right, then the social workers must demonstrate that their conduct was reasonable under the applicable standard of care. *See*, *e.g.*, *Romero v. Kitsap County*, 931 F.2d 624, 627 (9th Cir. 1991).

¶7      At oral argument, the social workers conceded that a foster child's substantive due process right to reasonable safety while in foster care was clearly established in 1996.[2] As

---

[2]      In *DeShaney v. Winnebago County Department of Social Services*, 489 U.S. 189 (1989), the Supreme Court held that a state does not have a constitutional duty to protect a child from an abusive parent even if the state has received reports of and had investigated the possibility of abuse. In a footnote, however, the Court stated:

> Had the State by the affirmative exercise of its power removed Joshua from free society and placed him in a foster home operated by its agents, *we might have a situation sufficiently analogous to incarceration or institutionalization to give rise to an affirmative duty to protect*. Indeed, several Courts of Appeals have held, by analogy to *Estelle* and *Youngberg*, that the State may be held liable under the Due Process

a result, the issue before this court is whether the social workers' conduct, viewed in the light most favorable to Weatherford, could subject them to individual liability under § 1983. Determining the appropriate standard by which to measure the challenged conduct presents a question of substantive federal law. *Martinez v. California*, 444 U.S. 277, 284 n.8 (1980).

## C.

¶8     In interpreting substantive federal law, state courts look first to decisions of the United States Supreme Court. Although only a decision of the Supreme Court binds a state court on a substantive federal issue, a number of state supreme courts have elected to follow, as far as reasonably possible, their federal circuits' decisions on questions of substantive federal law. *See Littlefield v. Dep't of Human Servs.*, 480 A.2d 731, 737 (Me. 1984); *Phillips v. Williams*, 608 P.2d 1131, 1135 (Okla. 1980); *York v. Gaasland Co.*, 250 P.2d 967, 971 (Wash. 1952); *see also Busch v. Graphic Color Corp.*, 662 N.E.2d 397,

---

Clause for failing to protect children in foster homes from mistreatment at the hands of their foster parents.

*Id.* at 201 n.9 (emphasis added). Neither the Supreme Court nor the Ninth Circuit Court of Appeals has addressed whether and to what extent the state owes a duty to a foster child held in a state foster care facility. Because the State concedes that Michael's right to reasonable safety existed, we address only the appropriate standard of conduct.

403 (Ill. 1996) ("[D]ecisions of the Federal courts interpreting a Federal act . . . are controlling upon Illinois courts."). In *Littlefield*, for example, the Maine Supreme Court considered the proper construction of eligibility requirements under the federal Social Security Act. Noting that the First Circuit had recently decided the exact issue before the court in *Sweeney v. Murray*, 732 F.2d 1022 (1st Cir. 1984), the Maine court chose to follow its circuit's precedent. The court stated:

> [E]ven though only a decision of the Supreme Court of the United States is the supreme law of the land on a federal issue, nevertheless, in the interests of existing harmonious federal-state relationships, it is a wise policy that a state court of last resort accept, so far as reasonably possible, a decision of its federal circuit court on such a federal question.

*Littlefield*, 480 A.2d at 737; *see also Commonwealth v. Negri*, 213 A.2d 670, 672 (Pa. 1965) ("[T]he clear indication for this Court is to accept and follow the decision of the Third Circuit on this matter until some further word is spoken by the Supreme Court of the United States.").

¶9        We agree that, although state courts are not bound by decisions of federal circuit courts, we may choose to follow substantive decisions of the Ninth Circuit Court of Appeals, recognizing that doing so furthers federal-state court relationships. In addition, consistent decisions among federal and state courts further predictability and stability of the law. Therefore, if the Ninth Circuit has announced a clear rule on an issue of substantive federal statutory law and if the rule

7

appears just, we will look first to the Ninth Circuit rule in interpreting substantive federal statutory law.

## II.

¶10      The gravamen of Weatherford's § 1983 complaint is the claim that the social workers violated Michael's substantive due process rights.   In determining the appropriate standard for imposing § 1983 liability, we first acknowledge that standards of state tort law do not apply; rather, the question is whether defendants violated Michael's federal constitutional rights. "Our Constitution deals with the large concerns of the governors and the governed, but it does not purport to supplant traditional tort law in laying down rules of conduct to regulate liability for injuries that attend living together in society." *Daniels v. Williams*, 474 U.S. 327, 332 (1986).

¶11      The touchstone of substantive due process is protection against government power arbitrarily and oppressively exercised.   *Id.* at 331-32; *see also County of Sacramento v. Lewis*, 523 U.S. 833, 845-46 (1998).   Thus, the Due Process Clause is "intended to prevent government officials from abusing their power or employing it as an instrument of oppression." *Sacramento*, 523 U.S. at 846 (citations and quotations omitted). When, as here, a plaintiff alleges he incurred damage from abusive executive conduct, the conduct must be said to be "arbitrary in the constitutional sense" to implicate the Due

8

Process Clause.[3] *Id.* (quoting *Collins v. City of Harker Heights*, 503 U.S. 115, 129 (1992)).

¶12    Neither the Supreme Court nor the Ninth Circuit has clearly defined when executive conduct becomes "arbitrary in the constitutional sense" so as to impose individual § 1983 liability in the foster care context. We gain guidance, however, from standards adopted by the Supreme Court and Ninth Circuit in analogous situations. *See*, *e.g.*, *Daniels*, 474 U.S. 327; *Youngberg v. Romeo*, 457 U.S. 307 (1982); *Estelle v. Gamble*, 429 U.S. 97 (1976); *L.W. v. Grubbs*, 92 F.3d 894 (9th Cir. 1996) (*Grubbs II*); *Estate of Connors v. O'Connor*, 846 F.2d 1205 (9th Cir. 1988) (*O'Connor*). As our discussion below reveals, § 1983 standards have developed, first expanding and then contracting, over time.

---

[3]    While acknowledging that "it is a *constitution* we are expounding," *M'Culloch v. Maryland*, 17 U.S. 316, 407 (1819), we also recognize that the people of Arizona may adopt a system of their choosing for determining when state officials may be held liable for foster care placement decisions. "Lest the Constitution be demoted to . . . a font of tort law," it is the prerogative of the self-governing people of the State of Arizona to make the legislative choice of when tort liability, except "at the ends of the tort law's spectrum of culpability," may attach to social worker placement and monitoring decisions. *Sacramento*, 523 U.S. at 847 n.8, 848; *see also Clouse ex rel. Clouse v. State*, 199 Ariz. 196, 203 ¶ 24, 16 P.3d 757, 764 (2001) ("We conclude that the immunity clause [of the Arizona Constitution], by authorizing the legislature to direct by law the manner in which suits may be brought against the state, confers upon the legislature a power to control actions against the state that it does not possess with regard to actions against or between private parties.").

¶13    Two relatively early Supreme Court decisions established general parameters for imposing § 1983 liability upon executive branch officials. *Youngberg*, 457 U.S. 307; *Estelle*, 429 U.S. 97. In *Estelle*, the Supreme Court examined the appropriate standard for determining when a prison official's failure to provide adequate medical care to a prison inmate could subject the official to § 1983 liability. 429 U.S. at 101-02. The *Estelle* Court began by noting that the Eighth Amendment's right to be free from cruel and unusual punishment embodies "broad and idealistic concepts of dignity, civilized standards, humanity, and decency." *Id.* at 102 (quoting *Jackson v. Bishop*, 404 F.2d 571, 579 (8th Cir. 1968)). Based on this principle, the Court reasoned:

> An inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met. In the worst cases, such a failure may actually produce physical "torture or a lingering death" . . . . In less serious cases, denial of medical care may result in pain and suffering which no one suggests would serve any penological purpose.

*Id.* at 103 (citations omitted). The Court held that the State's deliberate indifference to the serious medical needs of a prisoner violates the Eighth Amendment and provides the basis for an action under § 1983. *Id.* at 104.

¶14    The Supreme Court extended this analysis beyond the prison setting in *Youngberg*. In that case, the Court considered the appropriate standard for determining whether a patient

10

involuntarily committed to a state mental institution could bring suit against institution officials for the alleged breach of the patient's substantive due process right to reasonable safety and to freedom from unreasonable restraints. *Youngberg*, 457 U.S. at 321. The Court explained: "If it is cruel and unusual punishment to hold convicted criminals in unsafe conditions, it must be unconstitutional to confine the involuntarily committed—who may not be punished at all—in unsafe conditions." *Id.* at 315-16.

¶15 Based on this reasoning, the *Youngberg* Court held that § 1983 liability may be imposed for executive decisions that are "such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Id.* at 323. The Court noted, however, that "the decision, if made by a professional, is presumptively valid." *Id.* In addition, the "professional will not be liable if he was unable to satisfy his normal professional standards because of budgetary constraints; in such a case good-faith immunity would bar liability." *Id.* This standard, the Court reasoned, strikes the appropriate balance between an individual's constitutionally protected liberty interests and legitimate state interests "in light of the constraints under which most state institutions necessarily operate." *Id.* at 324.

11

¶16    After *Youngberg* and *Estelle*, the Supreme Court decided two companion cases concerning the degree of official misconduct necessary to give rise to liability under § 1983 for a violation of a prison inmate's due process rights. *See Daniels*, 474 U.S. 327; *Davidson v. Cannon*, 474 U.S. 344 (1986).    In those decisions, the Court emphasized the distinction between the type of conduct that gives rise to a negligence action and the type of conduct that gives rise to a § 1983 action.

¶17    In *Daniels*, a prison inmate brought a § 1983 claim alleging a prison official deprived him of his due process rights by negligently placing a pillow on a prison stairway, causing the inmate to slip and injure his back and ankle.    474 U.S. at 328.    The Court, seeking to define "when tortious conduct by state officials rises to the level of a constitutional tort," held that "the Due Process Clause is simply not implicated by a *negligent* act of an official causing unintended loss of or injury to life, liberty, or property." *Id.* at 328-29; *see also Davidson*, 474 U.S. at 348 (observing that due process protections "are just not triggered by lack of due care by prison officials").    The Court reasoned that the Due Process Clause was "intended to secure the individual from the arbitrary exercise of the powers of government," *Daniels*, 474 U.S. at 331 (quoting *Hurtado v. California*, 110 U.S. 516, 527 (1884)), and "to prevent governmental power from being 'used for purposes of oppression,'" *id.* (quoting *Murray's Lessee v.*

12

*Hoboken Land & Improvement Co.*, 59 U.S. 272, 277 (1855)). Negligent conduct, the Court concluded, is "quite remote" from these concerns. *Id.* at 332. "To hold that injury caused by such conduct is a deprivation within the meaning of the Fourteenth Amendment would trivialize the centuries-old principle of due process of law." *Id.* The *Daniels* Court, however, reserved the question of "whether something less than intentional conduct, such as recklessness or gross negligence, is enough to trigger the protections of the Due Process Clause." *Id.* at 334 n.3.

¶18     Relying upon this guidance from the Supreme Court, the Ninth Circuit initially held that certain types of gross negligence can implicate the Due Process Clause. *See*, *e.g.*, *Neely v. Feinstein*, 50 F.3d 1502, 1507 (9th Cir. 1995) ("conscious indifference amounting to gross negligence"); *Houghton v. South*, 965 F.2d 1532, 1536 (9th Cir. 1992) (same); *O'Connor*, 846 F.2d at 1208 (same); *see also Fargo v. City of San Juan Bautista*, 857 F.2d 638, 641 (9th Cir. 1988) ("If [the police officer's] conduct constituted gross negligence or recklessness, as opposed to mere negligence, then it constitutes a deprivation of a liberty interest . . . under the due process clause."); *Wood v. Ostrander*, 851 F.2d 1212, 1215 (9th Cir. 1988) (holding that due process claim was not barred under § 1983 because the alleged police conduct "may be more than mere negligence").

13

¶19    In *O'Connor*, the Ninth Circuit considered the implications of *Daniels* and *Davidson* for determining whether a state actor may be held liable, under the professional judgment standard, for violating the rights of an involuntarily committed mental patient.  The *O'Connor* court concluded that *Daniels* and *Davidson* did not affect the *Youngberg* test:

> Under *Youngberg*'s balancing test, the risk of harm and the burden on the state are weighed in examining discretionary management choices for reasonableness. Liability may be imposed on a professional state officer only when his or her decision is so objectively unreasonable as to demonstrate that he or she actually did not base the challenged decision upon professional judgment. *We believe that this standard is equivalent to that required in ordinary tort cases for a finding of conscious indifference amounting to gross negligence.*  Certainly, the *Youngberg* standard is far more stringent than that required for a finding of negligence, which may be demonstrated by a professional's mere failure to exercise the level of care expected of other professionals in the same field. We therefore hold that the inquiry relevant under *Youngberg* has not been affected by the Court's intervening decisions in *Daniels* and *Davidson.*

*O'Connor*, 846 F.2d at 1208 (emphasis added).

¶20    Similarly, the Ninth Circuit held that police officer conduct amounting to gross negligence or recklessness[4] would

---

[4]    Defining terms such as negligence, gross negligence, and recklessness is, at best, inexact.  As between negligence and gross negligence, negligence suggests "a failure to measure up to the conduct of a reasonable person."  *Daniels*, 474 U.S. at 332.  Gross negligence generally signifies "more than ordinary inadvertence or inattention, but less perhaps than conscious indifference to the consequences."  *Fargo*, 857 F.2d at 641 (quoting W. Keeton et al., *Prosser and Keeton on the Law of Torts* § 34, at 212 (5th ed. 1984)).  Under this definition of gross negligence, "conscious indifference amounting to gross

constitute a violation of the constitutional right to be free from excessive force and would subject an officer to § 1983 liability. *Fargo*, 857 F.2d at 641. *Fargo* involved a claim brought by an arrestee whom a police officer accidentally shot while placing him in handcuffs. The officer admitted that he acted contrary to his police training, but claimed that he was entitled to summary judgment because the shooting was accidental and, at most, merely negligent. *Id.* at 639. Rejecting the officer's argument, the court determined that the officer's conduct may have "constituted gross negligence or recklessness." *Id.* at 641. The Ninth Circuit held, "We cannot conclude as a matter of law that [the officer's] conduct, contrary as it was to proper police procedures, constituted mere inadvertence, and not a greater want of care." *Id.* at 642.

¶21 Recent Ninth Circuit case law, however, rejects the *Fargo* standard and raises a serious question about the continued validity of the professional judgment standard as applied in *O'Connor* and similar decisions. *See Grubbs II*, 92 F.3d 894. *Grubbs II* involved a § 1983 claim brought by a registered nurse at a medium security custodial institution against her supervisors after she was attacked by an inmate. The *Grubbs II*

---

negligence" falls closer to a recklessness standard, which usually involves a conscious disregard of a risk, than mere gross negligence. *See id.* at 642 n.7 (noting that recklessness can, however, be inferred from the facts and circumstances) (citation omitted).

court examined prior circuit decisions to decide whether a state official could be held liable under § 1983 for gross negligence. *Id.* at 896. The court concluded:

> [I]n order to establish Section 1983 liability in an action against a state official for an injury . . . the plaintiff must show that the state official participated in creating a dangerous condition, *and acted with deliberate indifference to the known or obvious danger in subjecting the plaintiff to it.* . . . Deliberate indifference to a known, or so obvious as to imply knowledge of, danger, by a supervisor who participated in creating the danger, is enough. *Less is not enough.*

*Id.* at 900 (emphasis added); *see also McGrath v. Scott*, 250 F.Supp. 2d 1218, 1226 (D. Ariz. 2003) (finding that the deliberately indifferent standard adopted in *Grubbs II* "applies generally to all supervisory liability claims under § 1983").

¶22    In redefining and applying the deliberate indifference standard, the *Grubbs II* court also examined the continued validity of the *O'Connor* professional judgment standard. The court reasoned that *Neely*, in which the court had held that "conscious indifference amounting to gross negligence" was enough to impose liability under the professional judgment standard, *Neely*, 50 F.3d at 1507, either was incorrect or must be limited to its facts. The court stated:

> While *Neely* can be distinguished on its facts from the present case, its language . . . is either incorrect to the extent that it approves the gross negligence standard, or it must be limited to the claims of inmate plaintiffs injured because of a miscarriage of the "professional judgment of a government hospital official" in the context of a captive plaintiff.

16

*Grubbs II*, 92 F.3d at 897.

¶**23**    Two years after the Ninth Circuit's *Grubbs II* decision, the Supreme Court reviewed another Ninth Circuit decision in an analogous area of § 1983 liability. *Sacramento*, 523 U.S. 833.  In *Lewis v. Sacramento County*, 98 F.3d 434 (9th Cir. 1996), the circuit court had concluded that a police officer's deliberate indifference to, or reckless disregard for, a person's right to life and security during a high speed chase could establish liability under § 1983.  In reaching its conclusion, the court noted that "[d]eliberate indifference is the greatest degree of misconduct we have previously required a plaintiff to prove to sustain a § 1983 action."  *Id*. at 441.

¶**24**    Reversing the Ninth Circuit, the Supreme Court emphasized the relatively narrow scope of constitutionally-based § 1983 actions.  The Court noted that the conduct of the officer fell within the middle range of culpability, somewhere between negligence, which is "categorically beneath the threshold of constitutional due process," and "conduct intended to injure in some way unjustifiable by any government interest."  *Sacramento*, 523 U.S. at 849.  The Court held that, with regard to high speed police chases, deliberate indifference, rather than being the *highest* degree of misconduct required, is *insufficient* to establish liability.  The Court concluded instead that "high speed chases with no intent to harm suspects . . . do not give

17

rise to liability under the Fourteenth Amendment, redressible by an action under § 1983." *Id.* at 854.

¶25  The Court emphasized again that "only the most egregious official conduct can be said to be 'arbitrary in the constitutional sense,'" *id.* at 846 (quoting *Collins*, 503 U.S. at 129), and that, as it had repeatedly stated, "the Due Process Clause was intended to prevent government officials 'from abusing [their] power, or employing it as an instrument of oppression,'" *id.* (quoting *Collins*, 503 U.S. at 126 (in turn quoting *DeShaney v. Winnebago County Dep't of Soc. Servs.*, 489 U.S. 189, 196 (1989) (in turn quoting *Davidson*, 474 U.S. at 348))). To meet that burden, the Court stated, "for half a century now we have spoken of the cognizable level of executive abuse of power as that which shocks the conscience." *Id*. Under the circumstances of a high speed chase, only "a purpose to cause harm unrelated to the legitimate object of arrest will satisfy the element of arbitrary conduct shocking to the conscience, necessary for a due process violation." *Id.* at 836.

¶26  The Court also recognized, however, that due process guarantees cannot be mechanically applied. *Id.* at 850. "Deliberate indifference that shocks in one environment may not be so patently egregious in another, and our concern with preserving the constitutional proportions of substantive due process demands an exact analysis of circumstances before any abuse of power is condemned as conscience shocking." *Id*. The

Court distinguished between imposing liability for deliberate indifference in a high speed chase situation and imposing liability for deliberate indifference to inmate welfare. The primary distinction rests upon the fact that, in a high speed chase, the officer must act decisively and show restraint at the same moment. Under such circumstances, little time exists for deliberation and, as use of the "term 'deliberate indifference' implies, the standard is sensibly employed only when actual deliberation is practical." *Id.* at 851 (citing *Whitley v. Albers*, 475 U.S. 312, 320 (1986)). In the custodial situation considered in *Estelle*, in contrast to the high speed chase situation, prison officials had time for reflection. "When such extended opportunities to do better are teamed with protracted failure even to care, indifference is truly shocking." *Id.* at 853. Similarly, the Court noted, in a situation such as *Youngberg*, "[t]he combination of a patient's involuntary commitment and his total dependence on his custodians obliges the government to take thought and make reasonable provision for the patient's welfare." *Id*. at 852 n.12.

¶27 Both *Grubbs II* and *Sacramento* held that, as to the situations considered, nothing less than deliberate indifference to a known or obvious danger on the part of a public official involves behavior that rises to a constitutionally conscience-shocking level. Neither decision, of course, considered the behavior sufficient to rise to such a level when the state

19

places or monitors a foster child. We consider, then, whether deliberate indifference or some other level of behavior gives rise to liability in the foster care context.

### III.

¶28     The *Grubbs II* standard, applied to the foster care context, would require that state workers responsible for placing and supervising a child in foster care could not be held liable under § 1983 unless they exhibited deliberate indifference to a known or obvious danger to the child. Weatherford argues that applying that standard will encourage those responsible for the well-being of foster children to deliberately overlook information that could place them on notice of dangerous conditions. Officials should not be less likely to incur liability, she argues, if they fail to consider available information. We agree that a child's right to reasonable safety while in foster care demands more from state workers than attention to known or obvious dangers. We hold, therefore, that a foster child can establish § 1983 liability against a state official by showing that the official, without justification, acted with deliberate indifference by placing a child in foster care or by maintaining a placement when the official knew that the placement exposed the child to danger or would have known of the danger but for the official's deliberate indifference. If a state worker, with time to consider the placement for a foster child, acts with such deliberate

indifference as to ignore information indicating that the placement will result in danger to the child or refuses to obtain information that, if considered, would reveal a danger to the child, the official's indifference is sufficiently egregious to justify imposing liability under § 1983.

**¶29** This standard reflects the Supreme Court's admonition that executive behavior violates § 1983 only if it involves an element of using the state's power in an oppressive manner. *Daniels*, 474 U.S. at 331-32. An official faces liability not for placing a child in foster care, but for placing the child in a *dangerous* foster care situation of which the official knew or would have known but for the official's deliberate indifference.

**¶30** The standard also incorporates the Ninth Circuit's admonition that anything less than deliberate indifference is not sufficient to establish § 1983 liability. The standard reflects the principle, however, that the state, once it undertakes to make a person dependent upon its care, also undertakes an affirmative duty to assume responsibility for that person's safety and general well-being. *DeShaney*, 489 U.S. at 200. Additionally, the standard takes into account the difficult decisions imposed upon state workers in making and maintaining foster child placements. In deciding whether the worker made a particular decision "without justification," a court must consider the totality of the circumstances: A social worker cannot be held liable if safe placement cannot be found

21

or if financial constraints prevent any choice other than that made. *Youngberg*, 457 U.S. at 323; *K.H. ex rel. Murphy v. Morgan*, 914 F.2d 846, 853-54 (7th Cir. 1990). Whether an initial placement decision reaches a "constitutionally shocking" level may involve different factual considerations than whether a decision to continue a placement rises to this level.

¶31 The standard we articulate today is also similar to the standard of conduct required by other circuit courts of appeals, whether denominated a "deliberate indifference" or "professional judgment" standard, in the foster care context. *See Yvonne L. v. N.M. Dep't of Human Servs.*, 959 F.2d 883, 894 (10th Cir. 1992); *Doe v. N.Y. Dep't of Soc. Servs.*, 649 F.2d 134, 145 (2d Cir. 1981); *see also Camp v. Gregory*, 67 F.3d 1286, 1293 (7th Cir. 1995) ("[P]ublic officials may be held liable for damages when they place a child in a foster home knowing or having reason to know that the child is likely to suffer harm there."); *Taylor v. Ledbettter*, 818 F.2d 791, 796 (11th Cir. 1987) ("A child abused while in foster care, in order to successfully recover from state officials in a section 1983 action, will be faced with the difficult problem of showing actual knowledge of abuse or that agency personnel deliberately failed to learn what was occurring in the foster home.").

¶32 In *Yvonne L.*, for example, the plaintiffs asserted the right "not to be placed in a foster care environment involving a known or reasonably suspected risk of harm by a third party."

959 F.2d at 891. The Tenth Circuit adopted a standard it labeled the "professional judgment" standard and held that this standard, "while it does not require actual knowledge the children will be harmed, [] implies abdication of the duty to act professionally in making the placements." *Id.* at 894. Similarly, in *Doe*, the Second Circuit, purporting to adopt the "deliberate indifference" standard, held that child placement agency officials may be held liable under § 1983 if they "exhibited deliberate indifference to a known injury, a known risk, or a specific duty, and their failure to perform the duty or act to ameliorate the risk or injury was a proximate cause of plaintiff's deprivation of rights under the Constitution." *Doe*, 649 F.2d at 145.

¶33     As *Doe* and *Yvonne L.* demonstrate, when applied to the unique facts of the foster care context, not much difference exists between the "deliberate indifference" and "professional judgment" standards. *Yvonne L.*, 959 F.2d at 894 ("To the extent there is a difference in the standards, we agree with the Seventh Circuit that the *Youngberg* standard applies."). As a result, we do not find it particularly helpful to label this standard of conduct "deliberate indifference" or "professional judgment."

¶34     Applying this standard to the facts of this case, we reverse the trial court's grant of summary judgment. On remand, the court must consider whether, under the standard articulated

today, undisputed material facts permit the court to conclude, as a matter of law, that defendant social workers acted with deliberate indifference sufficient to impose responsibility either for the decision to place Michael in the Shelter or for the decision to continue the placement.

## IV.

¶35     For the reasons described above, we vacate that part of the court of appeals' opinion set out in paragraphs twenty-two through thirty and approve the remainder of the opinion, reverse the trial court's grant of summary judgment to these defendants with regard to the § 1983 claim, and remand for further proceedings consistent with this opinion.

_____
Ruth V. McGregor, Vice Chief Justice

CONCURRING:

_____
Charles E. Jones, Chief Justice


_____
Rebecca White Berch, Justice


_____
Michael D. Ryan, Justice


_____
Andrew D. Hurwitz, Justice

24